UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:  07-22890-CIV-ZLOCH

VICTOR TONY JONES,

     Petitioner,

                                   **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

vs.

WALTER A. MCNEIL,[1] Secretary,
Florida Department of
Corrections,

     Respondent.

_____/

     THIS MATTER is before the Court upon Petitioner Victor Tony Jones's Petition For Writ Of Habeas Corpus By A Person In State Custody (DE 1).  Petitioner, Victor Tony Jones ("Mr. Jones"), is on death row at the Union Correctional Institution in Raiford, Florida, following convictions in 1993 for first degree murder. The instant Petition For Writ Of Habeas Corpus ("the Petition") was filed November 6, 2007.  DE 1.  On April 18, 2008, the State filed its Response To Order To Show Cause Why Petition For Writ Of Habeas Corpus Should Not Be Granted (DE 12).  Mr. Jones filed his Reply To Respondent's Response (DE 21) on June 6, 2008.

     The Court has carefully reviewed said Petition (DE 1), the

---

[1] Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk of the Court is directed to docket and change the designation of the Respondent.

entire court file and is otherwise fully advised in the premises. For the reasons that follow, the Petition for Writ of Habeas Corpus is **DENIED**.

## I.   FACTUAL BACKGROUND

The Supreme Court of Florida gave the following summary of the pertinent and salient facts:

> Jones was convicted of two counts of first-degree murder and two counts of armed robbery. According to the evidence presented at the trial, on December 19, 1990, the bodies of sixty-six-year-old Matilda Nestor and sixty-seven-year-old Jacob Nestor were discovered in their place of business. Mr. Nestor's body was found in the main office. He had been stabbed once in the chest. An empty holster was found on Mr. Nestor's waistband. Mrs. Nestor's body was discovered in the bathroom. She had been stabbed once in the back. The Nestors' new employee, Victor Tony Jones, was found slumped over on the couch in the main office not far from Mr. Nestor's body. The butt of a .22 caliber automatic pistol was protruding from under Jones' arm.

> According to the evidence, December 19 was Jones' second day of work for the Nestors. It appears that as Mrs. Nestor was entering the bathroom in the rear of the building Jones came up behind her and stabbed her once in the back. As Mr. Nestor came toward the bathroom from the main office, Jones stabbed him once in the chest. The medical examiner testified that Mrs. Nestor died as result of a stab wound to the base of her neck which severed the aorta that carries blood and oxygen to the brain and Mr. Nestor as a result of the stab wound to his chest which entered his heart.

> There was evidence that after being stabbed, Mr. Nestor retreated into the office, where he pulled the knife from his chest, attempted to call for help, drew his .22 caliber automatic pistol and shot five times, striking Jones once in the forehead. No money or valuables were found on either victim or in Mrs. Nestor's purse which was found on the couch in the main office next to the defendant. The evidence also was consistent with Mr. Nestor's body having been rolled over after he collapsed

so that personal property could be removed from his pockets.

After the couple was murdered, Jones was locked inside the building where he remained until police knocked down the door after being called to the scene by a neighbor. Money, keys, cigarette lighters and a small change purse that was later identified as belonging to Mrs. Nestor were found in Jones' front pocket. The Nestors' wallets were later found in the defendant's pants pockets. It was not immediately apparent to the police that Jones had been shot. However, after Jones was handcuffed and escorted from the building, he complained of a headache. When an officer noticed blood on Jones' forehead, and asked what happened, Jones responded, "The old man shot me." Rescue workers were called and Jones was taken to the hospital. While in the intensive care unit, Jones told a nurse that he had to leave because he had "killed those people." When asked why, Jones told the nurse, "They owed me money and I had to kill them."

Jones v. State, 652 So.2d 346, 348 (Fla. 1995).

## II.   PROCEDURAL BACKGROUND

On February 1, 1993, Mr. Jones was convicted of first degree murder for the deaths of Matilda Nestor and Jacob Nestor.   See DE 1 at 2.   The jury recommended the death penalty for the murder of Mrs. Nestor by a vote of ten to two and unanimously recommended the death penalty for the murder of Mr. Nestor.   Jones, 652 So.2d at 348.   The presiding judge adopted those sentencing recommendations. Id.   As to each murder, the trial judge found four aggravating factors and nothing in mitigation.[2]   Id.

---

[2]

1) Jones was under a sentence of imprisonment at the time of the murder, 2) Jones was convicted of a prior violent felony, 3) the murder was committed during the course of a robbery, and 4) the murder was committed for pecuniary gain, which the court merged with the "during the course

On direct appeal to the Supreme Court of Florida, Mr. Jones raised only five claims. First, "the trial court erred by denying his motion for judgment of acquittal on the two armed robbery counts." Second, "the trial court erred by failing to instruct the jury that if it found both the aggravating factor of "during the course of a robbery" and the aggravating factor of "for pecuniary gain" that it had to consider the two factors as one." Third, "the trial court erroneously rejected Jones' mental or emotional disturbance at the time of the offense as a statutory mitigating factor and failed to properly instruct the jury on the factor." Fourth, "a new sentencing proceeding is required because the mental health experts who testified failed to bring the possibility that Jones suffered from fetal alcohol syndrome/fetal alcohol effect to the court's attention and because the court refused to consider Jones' abandonment by his mother as a mitigating circumstance." Finally, "the trial court erred by failing to grant Jones' motion for mistrial based upon various alleged improper comments made by the prosecutor during penalty phase closing argument." Id. at 349. The Florida Supreme Court affirmed the convictions and sentences on appeal. Id. at 353.

----

of a robbery" aggravating factor. Although Jones presented evidence that he had been abandoned at an early age by his mother and that he suffered from extreme emotional or mental disturbance throughout his life, the court found nothing in mitigation.

Id. at 348-49 (footnote omitted).

4

Thereafter, Mr. Jones filed a petition for writ of certiorari to the United States Supreme Court which was denied.  Jones v. Florida, 516 U.S. 875 (1995).  Mr. Jones then sought postconviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, arguing twenty-two grounds for relief.  Jones v. State, 855 So.2d 611, 615 (Fla. 2003).  The motion raised the following claims:

> The amended motion argued the following points: (1) postconviction counsel was ineffective because of the lack of sufficient funding fully to investigate and prepare the postconviction motion; (2) appellant was denied due process and equal protection because records were withheld by state agencies; (3) no adversarial testing occurred at trial due to the cumulative effects of ineffective assistance of counsel, the withholding of exculpatory or impeachment material, newly discovered evidence, and improper rulings of the court; (4) trial counsel was ineffective for (a) failing adequately to investigate and prepare mitigating evidence, (b) failing to provide this mitigation to mental health experts, and (c) failing adequately to challenge the State's case; (5) trial counsel was burdened by an actual conflict of interest adversely affecting counsel's representation; (6) appellant was denied due process because he was incompetent, and trial counsel failed to request a competency evaluation; (7) appellant was denied a fair trial because of improper prosecutorial argument, and trial counsel was ineffective for failing to object; (8) appellant's convictions are constitutionally unreliable based on newly discovered evidence; (9) appellant was denied due process because the state withheld exculpatory evidence; (10) appellant's death sentence is unconstitutional because the penalty phase jury instructions shifted the burden to appellant to prove death was inappropriate; (11) the jury instructions on aggravating circumstances were inadequate, facially vague, and overbroad, and trial counsel was ineffective for failing to object; (12) appellant's death sentence is unconstitutional because the State introduced nonstatutory aggravating factors, and counsel was ineffective for failing to object; (13) jury instructions unconstitutionally diluted the jury's sense of responsibility in sentencing, and trial counsel was

> ineffective for not objecting; (14) appellant was denied his constitutional rights in pursuing postconviction relief because he was prohibited from interviewing jurors; (15) appellant is innocent; (16) execution by electrocution is unconstitutional; (17) Florida's capital sentencing statute is unconstitutional facially and as applied; (18) appellant's conviction and sentence are unconstitutional because the judge and jury relied on misinformation of constitutional magnitude; (19) appellant's death sentence is unconstitutional because it is predicated on an automatic aggravating circumstance, and counsel was ineffective for failing to object; (20) appellant "is insane to be executed"; (21) because of juror misconduct, appellant's rights were violated; and (22) cumulative errors deprived appellant of a fair trial.

Jones, 855 So.2d at 615.  The trial court held a Huff hearing[3] after which it granted "an evidentiary hearing limited to appellant's claims of ineffective assistance of counsel related to a voluntary intoxication defense, mitigation, and appellant's pretrial competency. After the evidentiary hearing, the lower court denied relief on all claims."  Id.

On appeal to the Florida Supreme Court, Mr. Jones again raised only five claims with multiple sub-issues.

> Jones contends in his first issue that trial counsel was constitutionally ineffective for failing to investigate a voluntary intoxication defense, failing to present other evidence consistent with the defense at trial, failing to challenge several jurors for cause, and failing to ensure appellant's presence at all critical stages of trial, and that no reliable adversarial testing occurred at the guilt phase as a result of the combined

---

[3]  Huff v. State, 622 So.2d 982, 983 (Fla. 1993) (requiring trial court to hold hearing on postconviction motion in death penalty cases "to determin[e] whether an evidentiary hearing is required and to hear legal argument relating to the motion").

effects of trial counsel's deficient performance. The claim regarding voluntary intoxication is addressed in the body of the opinion. Each of these claims fails to meet the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because each is either insufficiently pled or is conclusively refuted by the record. Jones's second issue alleges that defense counsel had a conflict of interest that denied appellant the effective assistance of counsel. This issue was fully argued during trial, and the court ruled on this issue. The claim thus could have and should have been raised on direct appeal and is procedurally barred. <u>See</u> <u>Wike v. State</u>, 698 So.2d 817, 820-21 (Fla.1997), <u>cert. denied</u>, 522 U.S. 1058, 118 S.Ct. 714, 139 L.Ed.2d 655 (1998); <u>Waterhouse v. State</u>, 596 So.2d 1008, 1015 (Fla.), 506 U.S. 957, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992). In his third issue, Jones argues that no adequate adversarial testing occurred at the penalty phase because trial counsel failed properly to investigate and present available mitigation, failed to present evidence to support the unconstitutionality of appellant's prior convictions, and failed to object to constitutional error with regard to jury instructions. The claim regarding investigation and presentation of mitigation is addressed in the opinion, and the claim regarding appellant's prior convictions is conclusory and thus fails under <u>Strickland</u>. Appellant's claims regarding the trial court's giving or failing to give certain standard jury instructions could and should have been or were raised on direct appeal; the claims also fail because this Court has expressly upheld these instructions against identical challenges. <u>See</u> <u>Asay v. State</u>, 769 So.2d 974, 989 (Fla.2000); <u>San Martin v. State</u>, 705 So.2d 1337, 1350 (Fla.1997), <u>cert. denied</u>, 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998); <u>Oats v. Dugger</u>, 638 So.2d 20, 21 n. 1 (Fla.1994), <u>cert. denied</u>, 513 U.S. 1087, 115 S.Ct. 744, 130 L.Ed.2d 645 (1995); <u>Jackson v. State</u>, 648 So.2d 85, 91 (Fla.1994); <u>Combs v. State</u>, 525 So.2d 853, 858 (Fla.1988) (rejecting defendant's claim that standard jury instruction is unconstitutional under <u>Caldwell</u>). Appellant argues as his fourth issue on appeal that the lower court erred in determining that public documents were exempt from disclosure, but the claim as stated is legally insufficient. Finally, appellant asserts that he is "insane to be executed" but admits that this issue is not ripe for review.

Jones, 855 So.2d at 615.

The court found "it unnecessary to address each claim here and affirm the lower court's denial of relief as to all of the issues raised.  [The court] discuss[ed] only two of appellant's claims: (1) that trial counsel was ineffective for failing to investigate and present a voluntary intoxication defense at trial, and (2) that counsel failed properly to investigate and present available mitigation during the penalty phase."  Id. at 615-16.

The Florida Supreme Court affirmed the trial court's denial of Mr. Jones's Rule 3.850 motion.  Id. at 619.  As to the issue of a voluntary intoxication defense at trial, the court found that trial counsel's decision to not present a voluntary intoxication defense was a matter of trial strategy and, regardless, Mr. Jones had failed to establish prejudice.  Id. at 616.  As such, the court determined that Mr. Jones did not meet the second prong of the Strickland standard for ineffective assistance of counsel.  Id.  As to the failure to properly investigate and present available mitigation, the court agreed with the trial court when it concluded that counsel's investigation was reasonable and that Mr. Jones failed to establish prejudice.  Upon review, the Florida Supreme Court found that "[c]ompetent, substantial evidence support[ed] this determination."  Id. at 618.  In particular, the court found that the facts adduced at the evidentiary hearing did not support Mr. Jones's claim.  See id.

8

Mr. Jones also petitioned for writ of habeas corpus. Id. at 619. He raised seven claims of ineffective assistance of appellate counsel.[4] The Florida Supreme Court found all these claims either procedurally barred or lacking in merit. These claims were denied "without further discussion." Id. Mr. Jones also contended that the Florida capital sentencing scheme was unconstitutional under Ring v. Arizona, 536 U.S. 584 (2002). This claim was also denied. Jones, 855 So.2d at 619.

Mr. Jones next filed a successive postconviction motion to vacate the judgment and sentence alleging that he was mentally retarded. See Jones v. Florida, 966 So.2d 319 (Fla. 2007). The trial court held an evidentiary hearing on the issue. See id. Three witnesses testified: "one (Dr. Eisenstein) on behalf of

----

[4] Jones claims that appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) trial counsel's conflict of interest and the trial court's denial of trial counsel's motion to withdraw; (2) the denial of appellant's motions to suppress; (3) trial counsel's objection to the substitution of the medical examiner; (4) the voluntariness of Jones's pleas in prior cases; (5) the trial court's denial of Jones's motion to compel psychiatric examination of a witness; (6) the trial court's denial of defense counsel's motion for mistrial based on the prosecutor's "inferential" comment on petitioner's right to remain silent; and (7) the invalidity of the jury instructions under Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

Jones, 855 So.2d at 619.

Jones, and two (Dr. Enrique Suarez and Lisa Wiley, a psychological specialist with the Department of Corrections) on behalf of the State.  The parties stipulated that evidence from the evidentiary hearing would be considered cumulatively with the evidence from prior proceedings." Jones, 966 So.2d at 322.  Ultimately, the trial court denied Mr. Jones's motion after finding "no credible evidence" to support his claims and finding that he failed to meet even one of the three statutory requirements for mental retardation. Id. at 325.  Mr. Jones appealed to the Florida Supreme Court.  He argued "that the trial court erred in rejecting his expert's opinion that the second prong of the mental retardation definition requires a "retrospective" determination of his adaptive functioning before age 18, instead of an assessment of Jones's adaptive functioning as an adult.  He also contended that the trial court erred in finding that Jones did not meet this prong of the definition." Id. at 325.  The Florida Supreme Court disagreed and affirmed "the circuit court's orders denying Jones's successive motion for postconviction relief and determining that Jones is not mentally retarded." Id. at 330.

On November 6, 2007, Mr. Jones filed the instant Petition For Writ Of Habeas Corpus (DE 1) pursuant to 28 U.S.C. § 2254.  On April 18, 2008, the State filed its Response (DE 12).  On June 6, 2008, Mr. Jones filed his Reply (DE 21).  This matter is now ripe. The State has not argued that the Petition is untimely.

III. __STANDARD OF REVIEW__

Mr. Jones's habeas corpus Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214 (1996) (codified at various provisions in Title 28 of the United States Code), which significantly changed the standards of review that federal courts apply in habeas corpus proceedings.  Under the AEDPA, if a claim was adjudicated on the merits in state court, habeas corpus relief can only be granted if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  This is an "exacting standard."  Maharaj v. Sec'y, Dept. of Corrections, 432 F.3d 1292, 1308 (11th Cir. 2005).

Pursuant to § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an] [opposite] result."  Williams v. Taylor, 529 U.S. 362, 405 (2000) (opinion of O'Connor, J., for a majority of the Court).  In other words, the "contrary to" prong means that "the state court's decision must be

substantially different from the relevant precedent of [the Supreme] Court." Id.

With respect to the "unreasonable application" prong of § 2254(d)(1), which applies when a state court identifies the correct legal principle but purportedly applies it incorrectly to the facts before it, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. See also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). Significantly, an "objectively unreasonable application of federal law is different from an incorrect application of federal law." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). An "unreasonable application" can also occur if a state court "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

As noted above, § 2254(d)(2) provides an alternative avenue for relief. Habeas relief may be granted if the state court's determination of the facts was unreasonable. "A state court's determination of the facts, however, is entitled to deference" under § 2254(e)(1). See Maharaj, 432 F.3d at 1309. This means that a federal habeas court must presume that findings of fact by a state court are correct; and, a habeas petitioner must rebut that presumption by clear and convincing evidence. See Hunter v. Sec'y,

<u>Dept. of Corrections</u>, 395 F.3d 1196, 1200 (11th Cir. 2005).

Finally, where a federal court would "deny relief under a de novo review standard, relief must be denied under the much narrower AEDPA standard." <u>Jefferson v. Fountain</u>, 382 F.3d 1286, 1295 n.5 (11th Cir. 2004).

## IV.   <u>EXHAUSTION AND PROCEDURAL BARS</u>

In response to Mr. Jones's Petition, the State has argued that certain of Mr. Jones's claims are unexhausted and procedurally barred from federal review.   To exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the <u>state's highest court</u>. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989)(emphasis added).   A careful review of the record shows that while Mr. Jones initially pursued a majority of the claims he now asserts here in his Rule 3.850 postconviction Motion, when he filed his appeal of the denial that Motion, he did not raise those same claims to Florida Supreme Court.   "When a petitioner fails to properly raise his federal claims in state court, he deprives the State of "an opportunity to address those claims in the first instance" and frustrates the State"s ability to honor his constitutional rights." <u>Cone v. Bell</u>, 129 S.Ct. 1769, 1780 (2009)(internal citations omitted).   Therefore, these types of claims are unexhausted and barred from federal habeas review. <u>See id.</u>

Ordinarily, a federal habeas corpus petition which contains

unexhausted claims is dismissed pursuant to <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), allowing Mr. Jones to return to the state forum to present his unexhausted claim or claims.  However, such a result in this instance would be futile, since Mr. Jones's unexhausted claim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law.  Mr. Jones has already pursued a direct appeal and filed two Rule 3.850 motions in state court, with the denial of the motions affirmed on appeal.[5]  Because there are no procedural avenues remaining available in Florida which would allow Mr. Jones to return to the state forum and exhaust the subject claim, the claim is likewise procedurally foreclosed from federal review.  <u>Collier v. Jones</u>, 910 F.2d 770, 773 (11th Cir. 1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well).

Claims that are unexhausted and procedurally defaulted in state court are not reviewable by the Court unless the petitioner

---

[5]In Florida, issues which could be but are not raised on direct appeal may not be the subject of a subsequent Rule 3.850 motion for post-conviction relief.  <u>Kennedy v. State</u>, 547 So.2d 912 (Fla. 1989). Further, even if the subject claim was amenable to challenge pursuant to a Rule 3.850 motion, it cannot now be raised in a later Rule 3.850 motion because, except under limited circumstances not present here, Florida law bars successive Rule 3.850 motions.  <u>See</u> Fla.R.Crim.P. 3.850(f).  <u>See</u> <u>also</u> <u>Moore v. State</u>, 820 So.2d 199, 205 (Fla. 2002)(holding that a second or successive motion for post-conviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion).

can demonstrate cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in Murray v. Carrier, 477 U.S. 478 (1986).  See House v. Bell, 547 U.S. 518 (2006); Dretke v. Haley, 541 U.S. 386 (2004).  See also United States v. Frady, 456 U.S. 152, 168 (1982).  Since Mr. Jones has not alleged, let alone established, cause to excuse his default, it need not be determined whether he suffered actual prejudice.  See Glover v. Cain, 128 F.3d 900, 904 n.5 (5th Cir. 1997).

The Court has fully reviewed the state court record.  Here, Mr. Jones has failed to meet this high standard such that federal habeas relief is warranted.  Habeas relief will be denied as to Claims III, V(B)(2), VI(3), VII, X, and XI (ineffective assistance of counsel) as procedurally barred.[6]

## V.   **ANALYSIS**

Mr. Jones argues twenty-six separate claims and sub-claims for habeas relief in his Petition.[7]  For ease of reference, the

---

[6]While the Court has found these claims to be both unexhausted and procedurally barred from federal review, the Court also finds that these claims lack merit.

[7]  Mr. Jones has also filed an accompanying Memorandum Of Law (DE 3). Both Mr. Jones's habeas Petition (DE 1) and Memorandum Of Law (DE 3) leave much to be desired in terms of analysis and argument. Mr. Jones has taken a "shot gun" approach to this federal habeas litigation, often making ineffective

headings of each part and subpart are the same as those used by Petitioner.

As an initial matter, Mr. Jones argues that "because this is a capital case involving Victor Tony Jones's fundamental constitutional right to life" "Congress' passage of S.686 on March 21, 2005" makes the AEDPA inapplicable to his claims, and that none of his claims are the subject to any procedural defaults. See DE 3 at 3, n.1. The State disagrees and argues that "the law [S.686] does not even mention any 'fundamental right to live,' much less any principal about this unmentioned right." DE 12 at 31. The State is correct.

> Section 1 of the Schaivo Act provides the following:
>
> The United States District Court for the Middle District of Florida shall have jurisdiction to hear, determine, and render judgment on a suit or claim by or on behalf of Theresa Marie Schaivo for the alleged violation of any right of Theresa Marie Schaivo under the Constitution or laws of the United States relating to the withholding or withdrawal of food, fluids, or medical treatment necessary to sustain her life.
>
> Section 2 of the Schaivo Act provides, in pertinent part, that "[a]ny parent of Theresa Marie Schaivo shall have standing to bring a suit under this Act."

---

assistance of counsel claims in one sentence or less and altogether failing to argue claims based on the proper elements. Given the ultimate importance of death penalty habeas petitions, the Court is particularly troubled by the lack of depth and clarity of his claims. Unfortunately, a number of the claims as set forth in his Petition are denied as insufficiently plead. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20 (9th Cir. 1994).

Pub.L. 109-3 (S.686)(March 21, 2005).  This law is also known as "Relief of the Parents of Theresa Marie Schaivo Act" and was passed to permit a complainant, more specifically, <u>only</u> the parents of Theresa Marie Schaivo to bring suit to assert a violation, <u>only</u> as to the rights of Theresa Marie Schaivo, and <u>only</u> in the Middle District of Florida.  <u>See</u> Pub.L. 109-3 (emphasis added).  Mr. Jones has provided no support for his argument that this extremely limited and narrow law 1) applies to him, 2) invalidates the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, or 3) eliminates state procedural bars or defaults.

Simply stated, Mr. Jones provides no basis of support for this argument because there is none.  The plain reading of this unambiguous statute is that its sole purpose was to address alleged violations of Theresa Marie Schaivo's rights under the United States Constitution.  Nowhere in the text does it even remotely implicate the rights of a federal habeas corpus petitioner.  And the Court declines Petitioner's invitation to find that it was intended to.  As such, Mr. Jones's current federal habeas petition is governed by the AEDPA and all of its attendant implications and applications.[8]

---

[8] Because Mr. Jones put forth this frivolous argument, he failed to argue his claims under the appropriate AEDPA standard of review.  His petition does not articulate how the decisions of the Florida Supreme Court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Often, this results in his claims being either insufficiently pleaded or entirely incomprehensible.

Therefore, Mr. Jones's claims for habeas relief are to be denied unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

**I. Trial Counsel was Burdened by an Actual Conflict of Interest Adversely Affecting Counsel's Representation, in Violation of the Sixth, Eighth, and Fourteenth Amendments and the Corresponding Provisions of the Florida Constitution. [sic] which was [sic] Preserved Below but not Raised on Direct Appeal by Appellate Counsel Ware.**

The basis for Mr. Jones's first claim for relief is essentially as follows: He was denied the effective assistance of counsel because "a conflict arose between trial counsel and Victor Jones." DE 1 at 8. This conflict was alleged to have occurred in the time period between the jury's decision of the guilt phase and the beginning of the penalty phase. At that time, defense counsel filed a motion to withdraw. Id. The basis for the motion was that Mr. Jones had threatened his counsel with "physical injury and death and has refused to communicate with counsel concerning the penalty phase proceedings in this case." Id. Ultimately, the trial court denied the motion to withdraw. Id. at 13. The guilt phase proceeded with trial counsel representing Mr. Jones. The end

18

result being that he was denied effective assistance of counsel because of the conflict.  He further argues that his appellate counsel was ineffective for failing to raise this issue on his direct appeal.  <u>Id.</u>

The State responds that this claim is "barred and meritless." DE 12 at 35.  The State argues that these claims are procedurally barred because they should either have been: 1) raised on direct appeal (trial court error denying the motion to withdraw) or 2) because it was determined to be procedurally barred by the state courts on Petitioner's writ of habeas corpus (ineffective assistance of appellate counsel).  <u>See</u> DE 12 at 40.  The State also asserts that the Florida Supreme Court correctly cited and applied <u>Strickland</u> to Mr. Jones's claims, therefore, the Court should deny this claim.  <u>See</u> <u>id.</u>

In his Reply (DE 21), Mr Jones's argument in response to the State is two-fold.  First, Mr. Jones argues that the Florida Supreme Court erred in determining that this claim (ineffective assistance of trial counsel) was procedurally barred because it could have and should have been raised on direct appeal.  <u>Id.</u> at 3).  Second, Mr. Jones again argues that his appellate counsel was ineffective for failing to raise this claim on direct appeal.  <u>Id.</u> at 5.

## The <u>Strickland</u> Standard

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United

19

States Supreme Court set forth the two-prong test that a convicted defendant must meet to demonstrate that his or her counsel rendered ineffective assistance.    First, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms." Strickland, 466 U.S. at 688.   "The test for ineffectiveness is not whether counsel could have done more; perfection is not required.   Nor is the test whether the best criminal defense attorneys might have done more.   Instead the test is whether some reasonable attorney could have acted in the circumstances . . . [as this attorney did]- whether what . . . [this attorney] did was within the 'wide range of reasonable processional assistance.'" Waters v. Thomas, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc) (quoting Strickland, 466 U.S. at 689) (citation omitted). See also Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (stating that to show unreasonableness "a petitioner must establish that no competent counsel would have made such a choice."). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). See also Chandler v. United

20

States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion——though the presumption is not insurmountable——is a heavy one." Chandler, 218 F.3d at 1314.

Second, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693.

## Ineffective Assistance of Trial Counsel

Mr. Jones first raised this claim in his Rule 3.850 postconviction Motion. The Florida Supreme Court found that "Jones's second issue alleges that defense counsel had a conflict of interest that denied appellant the effective assistance of counsel. This issue was fully argued during trial, and the court ruled on this issue. The claim thus could have and should have been raised on direct appeal and is procedurally barred. See Wike v. State, 698 So.2d 817, 820-21 (Fla. 1997), cert. denied, 522 U.S. 1058, 118 S.Ct. 714, 139 L.Ed.2d 655 (1998); Waterhouse v. State, 596 So.2d 1008, 1015 (Fla.), 506 U.S. 957, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992)." Jones, 885 So.2d at 616, n.4. In support, the state supreme court cited to two of its prior opinions.

21

Neither of those cases support the proposition that claims of ineffective assistance of counsel must be brought on direct appeal or are otherwise procedurally barred.

The procedural bar would be appropriate if Mr. Jones were to bring a claim of trial court error for denying his counsel's motion to withdraw, as claims of trial court error are properly brought on direct appeal in Florida. See Wike v. State, 698 So.2d 817 (Fla. 1997). However, there is a subtle difference because this claim argues not that the trial court erred but rather that Mr. Jones's counsel was operating under an actual conflict of interest and, as such, he was rendered ineffective. This claim was properly brought in a Rule 3.850 postconviction motion in Florida. See Smith v. State, 998 So.2d 516 (Fla. 2008). On appeal to the Florida Supreme Court, Mr. Jones clearly argued that this was a claim of ineffective assistance of counsel and was properly raised at the Rule 3.850 stage of proceedings.[9] See DE 13, App. F at 69. The Florida Supreme Court disagreed and denied the claim as procedurally barred. On the record before the Court, the Florida Supreme Court misapplied a procedural bar to this claim. Mr. Jones fairly presented this claim to the state court for its initial consideration. The state court declined to review the merits of

---

[9]   In fact, Mr. Jones's claim here is identical to the claim argued in his appeal of the denial of his postconviction motion (with the exception of adding thirteen pages of irrelevant summarized testimony of defense counsel at Mr. Jones's postconviction hearing). See DE 1 at 13-26.

the claim.

As the Florida Supreme Court denied this claim on an inadequate state procedural ground and not an application of federal law, Mr. Jones's claim will be analyzed here on its merit. See Cone v. Bell, 129 S.Ct. 1769 (2009)("[w]e have recognized that 'the adequacy of state procedural bars to the assertion of federal questions'. . . is not within the State's prerogative finally to decide; rather adequacy 'is itself a federal question.'"); see also Owen v. Secretary, 568 F.3d 894 (11th Cir. 2009).

On February 9, 1993, counsel for Mr. Jones filed a motion to withdraw as counsel after an incident where Mr. Jones allegedly threatened his counsel with physical injury. See DE 1 at 8. At a hearing held on the motion, Mr. Jones testified that he thought his counsel was a good lawyer who had been effective but that he had issues with certain aspects of trial strategy. See DE 13, App. Q, Vol. 14 at 2230-31. The trial court denied the motion finding:

> I consider you to be a very highly qualified lawyer. I know you take your responsibility of these death penalty cases extremely serious. I can understand where you would be displeased after so much effort to have someone vent in the way that Mr. Jones apparently did vent. However, I feel you will fulfill your obligations. You have got together a considerable amount to present to the jury in mitigation of sentence and I will deny your motion for leave to withdraw.

DE 13, App.Q, Vol. 14 at 2236-37. Thereafter, defense counsel continued his representation of Mr. Jones during the sentencing phase of his trial.

A criminal defendant's Sixth Amendment right to effective assistance of counsel is violated when an attorney has a conflict of interest.  In order for Mr. Jones to prevail on this claim, he would have to show that "his attorney had an actual conflict of interest, and second, that the conflict of interest adversely affected counsel's performance." McCorkle v. United States, 325 Fed. Appx. 804, 808 (11th Cir. 2009)(citing Pegg, 253 F.3d at 1277; see also Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002).  He did not.  Mr. Jones has argued——but has not established——that an actual conflict of interest existed.  And he has completely failed to show that the alleged conflict affected his counsel's performance.  The record indicates that while Mr. Koch and Mr. Jones had a disagreement in which Mr. Jones threatened his counsel, the conflict appeared to have been resolved by the time the penalty phase began.  Regardless, Mr. Jones has not shown how his counsel's conduct was in any way influenced by a conflict of interest. Finally, he failed to argue, let alone prove, that a conflict of interest caused deficient performance resulting in prejudice to Mr. Jones.  See Strickland, 466 U.S. at 694.  Mr. Jones does not cite to one page in the extensive record before the Court to where he was adversely affected by counsel's performance because of this alleged conflict of interest.  Rather, he appears to be asserting a per se violation of the right to effective assistance of counsel. This claim fails, however, as the Eleventh Circuit does not

24

recognize <u>per</u> <u>se</u> violations of the right to effective assistance of counsel.  <u>See</u> <u>McCorkle v. United States</u>, 325 Fed. Appx. 804 (11th Cir. 2009).  Mr. Jones is not entitled to relief on this claim. Habeas is denied.

### Ineffective Assistance of Appellate Counsel

Mr. Jones first raised this claim in his Petition For Writ Of Habeas Corpus filed with the Florida Supreme Court.  The court denied this claim because "Jones's petition for writ of habeas corpus raises seven claims of ineffective assistance of appellate counsel.  Because these claims are either barred or lack merit, we deny the petition as to these grounds without further discussion." <u>Jones</u>, 855 So.2d at 619. (footnote omitted).

As discussed above, Mr. Jones has failed to establish that his trial counsel was ineffective due to a conflict of interest. Therefore, his appellate counsel cannot be deemed ineffective for failing to raise a non meritorious claim.  <u>See</u> <u>Jones v. Campbell</u>, 436 F.3d 1285, 1304 (11th Cir. 2006)(finding it <u>fortiori</u> that appellate counsel was not ineffective for failing to raise an issue on appeal when the trial counsel's inactions were not deemed ineffective assistance of counsel for initially failing to object). Habeas relief is denied.

**II. Appellate Counsel Failed to Raise Constitutionality of Prior Convictions.**

Mr. Jones's second claim for habeas relief is that his appellate counsel failed to argue that it was trial court error to

deny motions to "set aside Mr. Jones's prior Dade County convictions" that were later used as aggravating factors at sentencing.  See DE 1 at 26.  Mr. Jones argues that his trial counsel preserved the issue but his appellate counsel failed to raise this on appeal and therefore rendered ineffective assistance of counsel.  See DE 1 at 29.

The State responds that "appellate counsel also cannot be deemed ineffective for failing to raise a nonmeritorious claim." DE 12 at 55.  Specifically, the State argues that "[t]he Florida Supreme Court has recognized that it does not have jurisdiction to entertain appeals from the denials of motions for post conviction relief from convictions that do not lie within its appellate jurisdiction."  Id.  Mr. Jones did not make further argument in support of this claim in his Reply.  See DE 21 at 5.

Mr. Jones first raised this claim in his petition for writ of habeas corpus filed with the Florida Supreme Court.  See Jones, 855 So.2d at 619.  The court denied this claim "[b]ecause these claims are either barred or lack merit, we deny the petition as to these grounds without further discussion."  Id.

Initially, counsel for Mr. Jones filed motions to set aside his prior convictions which were later used as aggravating factors at sentencing.  The motions were denied by the trial judge.  Mr. Jones's counsel argued that such denial was error.  Mr. Jones now argues that while his trial counsel preserved the issue for appeal,

26

his appellate counsel failed to raise this preserved issue on direct appeal of his conviction and sentence.  <u>See</u> DE 1 at 27-29. Mr. Jones contends that this failure constitutes ineffective assistance of counsel.

This claim, as are most of Mr. Jones's claims, is insufficiently pleaded.  In order to establish a claim of ineffective assistance of counsel, "a defendant must show that his counsel's representation fell below an 'objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  <u>Devier v. Zant</u>, 3 F.3d 1445, 1450 (11th Cir. 1993)(<u>citing</u> <u>Strickland</u>, 466 U.S. at 688, 694.

In order for Mr. Jones to prevail on this claim, he would have to show that because the trial court erred in denying defense counsel's motion to set aside his prior convictions, his appellate counsel was ineffective when it failed to raise this claim on direct appeal.  If the trial court did not err, then appellate counsel cannot be faulted for not raising this issue on appeal. <u>See</u> <u>Jones v. Campbell</u>, 436 F.3d 1285, 1304 (11th Cir. 2006).  He would also have to show prejudice.

Here, Mr. Jones fails to argue how the trial court committed error when it denied the motion to set aside.  The Court is simply left to wonder exactly why the trial court should have granted the

motion and why appellate counsel's failure to assert this argument fell below an objective standard of reasonableness. Further, he fails to assert how or why he was prejudiced other than to argue "Mr. Jones's capital conviction and sentence of death are the resulting prejudice." DE 1 at 29. This, of course, is not the standard to establish the prejudice prong under <u>Strickland</u>. If it were, it would render the entire prejudice analysis superfluous because all habeas petitioners would have been "prejudiced" as they are seeking relief from their conviction and sentence.

To show prejudice, in essence, a petitioner must demonstrate that there is at least a reasonable probability that the outcome of the proceeding would have been different. <u>See</u> <u>Crawford v. Head</u>, 311 F.3d 1288, 1327-28 (11th Cir. 2002). Mr. Jones was sentenced to death by the trial judge after it was determined that Mr. Jones qualified for four statutory aggravators and established no mitigating factors. <u>See</u> <u>Jones</u>, 652 So.2d at 349. As a result, even if the trial court had set aside Mr. Jones's prior convictions, the aggravating factors still would outweigh mitigation and the outcome of the proceedings would not have been different. Mr. Jones has failed to establish the prejudice prong of <u>Strickland</u>.

Additionally, Mr. Jones has failed to argue that the Florida Supreme Court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  This is the standard of review by which the Court is bound. In his Petition (DE 1), Mr. Jones failed to even cite to the Florida Supreme Court's decision on this claim.  Habeas relief is denied.

## III. Appellate Counsel Improperly Raised Fetal Alcohol Syndrome Issue.

Mr. Jones's third claim for relief is that his appellate counsel had an "obsessive focus on alcoholism and fetal alcohol syndrome" and it resulted in a "colossal mistake that operated to the considerable prejudice of Mr. Jones, who was denied the effective assistance of appellate counsel because of her personal biases."  DE 1 at 30-31.

The State responds that Mr. Jones "is entitled to no relief because the claim is unexhausted, procedurally barred, insufficiently plead and meritless."  DE 12 at 57.  It is argued that Mr. Jones did not make this argument to the Florida Supreme Court in his petition for writ of habeas corpus and, therefore, the court did not address this claim in the order denying his petition. Id. at 60.  Accordingly, the State argues, this claim would be unexhausted and subsequently procedurally barred.  Id.  The State further argues that even if it were not unexhausted and

procedurally barred, this claim has been insufficiently pleaded. Id. at 62. Mr. Jones did not reply to the State's arguments as to this claim. See DE 21.

The State is correct. Mr. Jones filed his Petition For Writ Of Habeas Corpus with the Florida Supreme Court in March of 2002. DE 13, App. I, Vol. 2. A review of the Petition reveals that Mr. Jones did not fairly present this claim to the state's highest court. As such, this claim is unexhausted and procedurally barred from further review. Castille v. Peoples, 489 U.S. 346, 351 (1989); see also supra pp. 10-12. Habeas relief is denied.


## IV.  Trial Counsel's Attempts to Suppress Evidence were Dropped on the Direct Appeal.

In an attempt to construe the above-titled claim into one that is cognizable before the Court, it appears that Mr. Jones is arguing that his appellate counsel was ineffective for failing to assert that the trial court erred in denying certain motions to suppress in advance of trial. See DE 1 at 31.

Similar to Mr. Jones's third claim, the State responds that Mr. Jones's claim is "insufficiently plead, unexhausted, procedurally barred and without merit." DE 12 at 63. The State argues that because the Florida Supreme Court found that this claim was "either barred or lack[s] merit" that this Court should find the same. More significantly, the State argues that this claim is insufficiently pleaded. See DE 12 at 74. It is argued that Mr.

Jones has failed to explain "how counsels' failure to have raised this conclusory claim would have resulted in a reasonable probability of a different result except through conclusory allegations." DE 12 at 74. Mr. Jones did not specifically reply to this claim but rather "relies on the facts, arguments, and authorities discussed in his habeas petition and memorandum of law." DE 21 at 5.

Mr. Jones first raised this claim in his petition for writ of habeas corpus filed with the Florida Supreme Court. See Jones, 855 So.2d at 619. The court denied this claim "[b]ecause these claims are either barred or lack merit, we deny the petition as to these grounds without further discussion." Id.

Here, Mr. Jones's entire legal argument is: "Appellate counsel did not carry forward any of these issues on the direct appeal." DE 1 at 32. Mr. Jones provides no argument as to: 1) why the trial court erred and 2) why his appellate counsel's failure to argue this error on direct appeal shows that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Rather, he declines to set forth any argument and his memorandum of law contains unhelpful citations standing for general propositions such as "[t]he right to cut off questioning is a 'critical safeguard' of the Fifth Amendment." DE 3 at 7. As Mr. Jones has

31

failed to set forth any cogent legal argument, the Court cannot grant him habeas relief.

If the trial court did not err, then appellate counsel cannot be faulted for not raising this issue on appeal.  <u>See</u> <u>Jones v. Campbell</u>, 436 F.3d 1285, 1304 (11th Cir. 2006).  Mr. Jones has failed to establish the threshold complaint of trial court error, let alone how his claim satisfies the two prong test of <u>Strickland</u>. Lastly, he did not even address whether or not the Florida Supreme Court's decision was unreasonable or contrary to law.  This claim suffers a similar fate to that of Mr. Jones's second claim.  <u>See</u> <u>supra</u> pp. 10-12.  Habeas relief is denied.

## V.   Mr. Jones's Convictions are Materially Unreliable Because no Adversarial Testing Occurred.

Mr. Jones's fifth claim for relief and its multiple sub-claims all argue one aspect or another of his counsel's representation during the guilt phase of his trial.  <u>See</u> DE 1 at 32.  He asserts six sub-claims.  The State responds generally that Mr. Jones is "entitled to no relief as parts of the claim are unexhausted and procedurally barred and the entire claim lacks merit."[10]  DE 12 at 81.

Mr. Jones replies that the Court is not necessarily bound by

---

[10] The State filed a fifty page response to this claim.  It did not specifically address Mr. Jones's sub-claims in any particular order which leaves the Court to discern what exactly the State's arguments are regarding each individual sub-claim. <u>See</u> DE 12 at 81-131.

the decision of the state courts because the United States Supreme Court has twice "reminded courts, 'deference [to state court findings and conclusions] does not by definition preclude relief." Miller-El v. Dretke, 125 S.Ct. 2317, 2325 (2005)(quoting Miller-El v. Cockrell, 537 U.S. 322 340 (2003))."  DE 21 at 7.

**A.   Counsel Failed to Challenge Biased Jurors.**

Mr. Jones begins his ineffective assistance of counsel claims by arguing that his trial counsel "failed to challenge jurors who expressed a bias or prejudice in favor of the death penalty; who indicated that they felt all indicted people were guilty and; who indicated that the defendant's failure to testify would be held against him." DE 1 at 32.  The State responded that "[d]uring jury selection, Petitioner did not attempt to challenge Jurors Carpenter, Dicus or Wallo in any manner." DE 12 at 85.  Further, the State argues that while certain jurors may have made statements that Mr. Jones construed as biased, during questioning the jurors also stated that they would be able to evaluate the aggravating and mitigating circumstances, set aside personal experiences and otherwise agree to keep open minds regarding the case. See DE 12 at 83-85.

Mr. Jones first argued this claim in his Rule 3.850 postconviction Motion.  On appeal of the denial, the Florida Supreme Court denied this claim finding it "unnecessary to address each claim here and affirm the lower court's denial of relief as to

all of the issues raised." <u>Jones</u>, 855 So.2d at 615.  Mr. Jones argues that "[c]ounsel was ineffective for failing to identify specific jurors he would use peremptory challenges to excuse and for failing to request additional peremptory challenges." DE 1 at 34.  As an initial matter, the United States Supreme Court has "'long recognized' that 'peremptory challenges are not of federal constitutional dimension.'" <u>Rivera v. Illinois</u>, 129 S.Ct. 1446 (2009) (<u>quoting</u> <u>United States v. Martinez-Salazar</u>, 528 U.S. 304, 311 (2000)).  "States may withhold peremptory challenges 'altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.'" <u>Id.</u> at 1450 (<u>quoting</u> <u>Georgia v. McCollum</u>, 505 U.S. 42, 57 (1992)).  Mr. Jones contends that he was denied the effective assistance of counsel when the jury was impaneled because an additional challenge remained which should have been used to strike certain jurors which Mr. Jones claims were biased.  However, there is nothing in the record to indicate, nor has Mr. Jones shown, that his jury was not constituted of persons who were qualified for jury service and not challengeable for cause.  There is no indication that trial counsel's failure to object rendered Mr. Jones's trial "fundamentally unfair" or that "there is a reasonable probability that, but for counsel's unprofessional errors that the result of the proceeding would have been different." <u>Devier</u>, 3 F.3d at 1451; <u>Strickland</u>, 466 U.S. at 694.  Mr. Jones also argues that "trial counsel failed to question

34

potential jurors about their understanding of voluntary intoxication defense and also failed to question jurors about their feelings about the use of drugs as viable defenses to crimes or in terms of mitigation of crimes." DE 1 at 34. This is the entire argument put forth by Mr. Jones on this issue. It is insufficiently pleaded. In order to prevail, Mr. Jones must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668 (1984). He has not done so. Habeas relief is denied.

**B.    Trial Counsel Failed to Investigate and Present Mr. Jones's History of Mental Health and Substance Abuse Problems.**

Mr. Jones next argues that his counsel was ineffective for failing to conduct an investigation into certain potential defenses and mitigation allegedly available to Mr. Jones. See DE 1 at 35. In particular, Mr. Jones argues that his counsel: 1) should have put forth a voluntary intoxication defense and mental health mitigation and 2) failed to investigate his longstanding mental problems. See id. at 35-54.

**1.    Counsel failed to investigate and develop an intoxication defense.**

Mr. Jones's first sub-claim argues that his counsel provided ineffective assistance when he failed to "investigate the issue of intoxication either as an affirmative defense or as potential mitigation." See DE 1 at 35. Mr. Jones further argues that

"foregoing an intoxication defense, which did have evidentiary support, was unreasonable. The failure to present the most cogent legal defense is unreasonable attorney performance, particularly in a case such as this where a client's competency was in doubt." DE 1 at 46.

The State responds that Mr. Jones's counsel testified at an evidentiary hearing that "in his experience intoxication, particularly on illegal drugs, was dangerous evidence because juries tend to view such evidence negatively." DE 12 at 91. Defense counsel testified that "he had spoken to people who had served on juries and that they had indicated that they generally do not consider intoxication mitigating." Id. at 92. Ultimately, the State argues that "[r]ejecting a claim of ineffective assistance of counsel because counsel made a strategic decision to proceeding [sic] in a different manner is perfectly consistent with Strickland and its progeny." DE 12 at 123.

Mr. Jones first raised this claim in his Rule 3.850 postconviction motion. On appeal from the denial of relief, the Florida Supreme Court affirmed as follows:

> Appellant claimed that his trial counsel was ineffective
> for failing to investigate and present a voluntary
> intoxication defense, and that he was prejudiced because
> such intoxication negates specific intent, the requisite
> mental state for first-degree murder. The trial court
> concluded that trial counsel chose not to present a
> voluntary intoxication defense as a matter of trial
> strategy and that appellant failed to establish
> prejudice, the second prong of Strickland. We agree.

This Court has held that it will not second-guess counsel's strategic decisions about whether to pursue an intoxication defense. <u>Johnson v. State</u>, 769 So.2d 990, 1001-02 (Fla. 2000); <u>see</u> <u>Occhicone v. State</u>, 768 So.2d 1037, 1048 (Fla. 2000) (holding that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct"). At the hearing below, appellant's trial counsel testified that he was aware that a toxicology report indicated that appellant's blood contained trace indications of the presence of cocaine. He stated that he did not pursue a voluntary intoxication defense for several reasons. First, it was his experience that juries did not accept voluntary intoxication as a defense or mitigating factor, especially when the charge is murder. In addition, appellant told counsel that he was not intoxicated at the time of the murders and that he was innocent-i.e., that an intruder killed his employers. Thus, the evidence supports the trial court's determination that counsel's decision not to pursue an intoxication defense was a reasonable, strategic one. <u>See</u> <u>Stewart v. State</u>, 801 So.2d 59, 65 (Fla. 2001) (holding that counsel was not ineffective for failing to employ a voluntary intoxication defense where, at an evidentiary hearing, defense counsel testified that he considered an intoxication defense but determined that it was not a viable defense based on the facts of the case). In addition, appellant maintained his innocence, a defense inconsistent with an intoxication defense. <u>See</u> <u>Cherry v. State</u>, 781 So.2d 1040, 1050 (Fla. 2000) (stating that voluntary intoxication defense is wholly inconsistent with the defense of innocence), <u>cert. denied</u>, 534 U.S. 878, 122 S.Ct. 179, 151 L.Ed.2d 124 (2001); <u>Combs v. State</u>, 525 So.2d 853, 855 (Fla. 1988) (rejecting ineffective assistance claim because the "presentation of an intoxication defense would have been inconsistent with Combs' testimony that he was at home at the time of the murder and did not commit the offense").

Finally, to assert a voluntary intoxication defense, a defendant must present evidence of intoxication at the time of the offense that would establish the defendant's inability to form the requisite specific intent. <u>Rivera v. State</u>, 717 So.2d 477, 485 (Fla. 1998); <u>see</u> <u>also</u> <u>Linehan v. State</u>, 476 So.2d 1262, 1264 (Fla. 1985) (emphasizing that voluntary intoxication is an affirmative defense and that defendant must come forward

with evidence of intoxication, not just use of
intoxicants, at the time of offense sufficient to
establish an inability to form the intent necessary to
commit the crime charged). The lower court found that not
one of appellant's witnesses who testified at the hearing
on this issue was credible. Appellant's cousin, a
convicted felon and admitted drug user and dealer,
testified that he and appellant used drugs and "got high"
together one day, but he was uncertain whether it was the
day before the murders. Further, two psychologists
testified that appellant was intoxicated at the time of
the murders, but their testimony was based on hearsay
interviews with appellant's family members, none of whom
could say they saw appellant on the day of-or even the
evening before-the murders. These experts also testified
that they relied on the toxicology report, but neither
knew what that report meant regarding appellant's
intoxication at the time of the murders. Matters of
credibility fall within the trial court's ambit.
Appellant has not shown the court's rejection of this
testimony to be error. In addition, the State's expert
witness on toxicology and intoxication testified, based
on the toxicology report, that appellant was not
intoxicated at the time of the murders. Accordingly, the
trial court's determination that appellant failed to
establish this claim of ineffective assistance of counsel
is affirmed.

Jones, 855 So.2d at 616-17.

Mr. Jones's habeas petition is governed by the Antiterrorism

and Effective Death Penalty Act of 1996, "which limits our review

of the decisions of the state courts and establishes a 'general

framework of substantial deference' for reviewing 'every issue that

the state courts have decided.'" Fotopoulos v. Sec'y for the Dep't

of Corr., 516 F.3d 1229, 1232 (11th Cir. 2008) (citing Crowe v.

Hall, 490 F.3d 840, 844 (11th Cir. 2007)(quoting Diaz v. Sec'y for

the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005)). After

careful review of Mr. Jones's claim regarding a voluntary

intoxication defense, there is nothing in the record to suggest that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court or that there was an unreasonable determination of the facts. See Fotopoulos, 516 F.3d at 1232. Based on the testimony of counsel at the evidentiary hearing, Mr. Jones's assertion that his counsel failed to investigate a possible voluntary intoxication defense is inaccurate. Mr. Jones's counsel did not pursue this defense for strategic reasons. And the Court will not second guess Mr. Koch's decisions after he conducted an appropriate investigation of the facts. Nor will the Court reverse the Florida Supreme Court's determination of this issue absent a finding of unreasonableness. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994). Second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). Therefore, the foregoing resolution of his assertion of ineffectiveness of counsel was reasonable and in accord with applicable federal authority, and should not be disturbed. Williams v. Taylor, 529 U.S. 362 (2000). Habeas relief is denied as to this claim.

**2.     Counsel also failed to investigate Mr. Jones's longstanding mental health problems.**

Mr. Jones's second sub-claim is not entirely clear. He initially appears to assert that his counsel failed to investigate potential mental health mitigation but, in reality, he is arguing that his counsel failed to investigate certain records and information which would have aided the expert witnesses that counsel did retain to testify about competency and mitigation.  See DE 1 at 53.  Further, Mr. Jones argues that his counsel failed to obtain certain medical records which could have been used to challenge prior convictions.  See DE 1 at 54.

The State responds that this claim is unexhausted because in his post conviction Motion, Mr. Jones only mentioned evidence of his mental state as connected to an intoxication defense.  See DE 12 at 116.  Specifically, "[h]e did not raise a distinct claim that counsel was ineffective for failing to present a mental health defense.  Moreover, on appeal from the denial of his post conviction Motion, Petitioner did not argue that the trial court had erred in rejecting a claim that counsel was ineffective for failing to present a separate mental health defense.  DE 12 at 117.

Mr. Jones replies that his "post conviction motion clearly denominated numerous aspects of Petitioner's mental status at the time of the offense and before, the impact of which was not limited to counsel's failure to develop and present an intoxication defense."  DE 21 at 7.

40

The Court has reviewed Mr. Jones's initial brief filed with the Florida Supreme Court in 2002 and finds that Mr. Jones did not argue this claim. <u>See</u> DE 13, App. F. Vol. 2.  Mr. Jones did assert a claim for failure to investigate and put forth a voluntary intoxication defense.  <u>See</u> <u>id.</u>  He also put forth penalty phase failures similar to this claim but he made no claims of error during the guilt phase as is set forth here.  Therefore, this claim is unexhausted and procedurally barred from further review.  <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>see</u> <u>also</u> <u>supra</u> pp. 10-12.  Habeas relief is denied.

**C.   Counsel Failed to Support the Defense Theory by Failing to Present Evidence that No Gunshot Residue was Present on Mr. Jones or the Victim.**

Mr. Jones's next claim for habeas relief is that his counsel failed to put forth evidence which would have supported his claim that the murders for which he was convicted were committed by another person.  <u>See</u> DE 1 at 54.  In particular, Mr. Jones contends that a gunshot residue test dated April 21, 1929 [sic] completed by the Miami Dade Police Department, revealed that '[e]xaminations conducted on items mentioned above did not reveal the presence of Gunshot Residue Particles.'"  DE 1 at 55.  Mr. Jones argues that had his counsel presented this evidence to the jury, it would have supported his theory that he was innocent and his counsel's failure to do so was unreasonable and amounted to ineffective assistance of counsel.  <u>See</u> DE 1 at 55.

41

The State responds that the state court's determination of this claim was not unreasonable because the "Petitioner failed to show deficiency or prejudice." DE 12 at 128. Specifically, the State argues that Mr. Jones has failed to show prejudice because the failure to present gunshot residue evidence "did not create a reasonable probability that Petitioner would not have been convicted." DE 12 at 129.

Mr. Jones replies that "[i]t simply makes no strategic sense to fail to put on one of the few forensic pieces of evidence that did support the defense that someone else did it." DE 21 at 20. He then reiterates that "[t]rial counsel's actions in Mr. Jones' case were objectively unreasonable and severely prejudiced the Petitioner." Id.

Mr. Jones first argued this claim in his Rule 3.850 postconviction Motion. On appeal to the Florida Supreme Court, the court denied this claim finding it "unnecessary to address each claim here and affirm the lower court's denial of relief as to all of the issues raised." Jones, 855 So.2d at 615. Further, the court found "[e]ach of these claims fails to meet the standard established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because each is either insufficiently pled or is conclusively refuted by the record." Id. at 616, n.4.

The trial court originally denied this claim for a failure to

"satisfy either prong of <u>Strickland</u>" because both victims were stabbed to death.  It is averred that a test showing that no gun shot residue was found on Mr. Jones or the hands of the victim would not have aided in his defense.  Even if it had, he still failed to satisfy the high standard that must be met to prevail on an ineffective assistance of counsel claim.  <u>See</u> DE 13, App. R. Vol. 2 at 383.  The Court agrees.  The Court is bound by the restrictions set forth in 28 U.S.C. §2254(e).  Section 2254(e) provides:

> **(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

After careful review of Mr. Jones's ineffective assistance of counsel claim, there is nothing in the record to suggest that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court or that there was an unreasonable determination of the facts.  <u>See</u> <u>Fotopoulos v. Secretary</u>, 516 F.3d 1229, 1232 (11th Cir. 2008).  Mr. Jones failed to satisfy either prong of <u>Strickland</u>.  Therefore, the foregoing resolution was reasonable and in accord with applicable federal authority, and should not be disturbed.  <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

**D.   Counsel Failed to Ensure Mr. Jones's Presence During Critical Stages of the Trial.**

Mr. Jones's final claim for habeas relief regarding the effective assistance of counsel during the guilt phase is that his counsel "unreasonably failed to ensure that Mr. Jones was present during critical stages of his trial."  DE 1 at 56.  Mr. Jones alleges that "numerous examples appear in the record where Mr. Jones is not present for stages of his trial, including unrecorded bench conferences, which are constitutionally relevant."  DE 1 at 56.

The State responds by arguing that this claim should be denied because it is insufficiently plead since Mr. Jones has "made no attempt to show how his alleged absences were prejudicial or how they created a reasonable probability of a different result."  DE 12 at 130.  The State also argues that this claim lacks merit for several different reasons, including that the United States Supreme Court has held "that a defendant's mere failure to object to his absence is sufficient to waive a claim regarding his right to be present" and has also held "that there is no cognizable claim about a defendant's absence unless his presence would not have contributed to the proceedings."  DE 12 at 130.

Mr. Jones first argued this claim in his Rule 3.850 postconviction motion.  On appeal of its denial to the Florida Supreme Court, the court denied this claim finding it "unnecessary to address each claim here and affirm the lower court's denial of

relief as to all of the issues raised." Jones, 855 So.2d at 615. Here, Mr. Jones makes no specific allegations as to which "critical stages" of his trial he was not present and he makes no argument as to why or how he would have been prejudiced.  The Court cannot grant habeas relief on such conclusory allegations.  Clearly, this claim is insufficiently pleaded.  In order to prevail, Mr. Jones must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.  See Strickland v. Washington, 466 U.S. 668 (1984).  He has not done so.  Habeas relief is denied.

As though it was an afterthought, Mr. Jones also has one sentence in his Petition arguing that his appellate counsel was ineffective.  It reads as follows: "Just as with the conflict claim, appellate counsel failed to raise this issue to the substantial prejudice of Mr. Jones."  DE 1 at 56.  That is the entire claim.

Mr. Jones fails to argue how he was "substantially" prejudiced.  The Court finds this portion of the claim insufficiently pleaded. Regardless, as discussed, Mr. Jones has failed to establish that his trial counsel was ineffective. Appellate counsel cannot be deemed ineffective for failing to raise a non meritorious claim. See Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006)(finding it a fortiori that appellate counsel was not ineffective for failing to raise an issue on appeal when the

trial counsel's inactions were not deemed ineffective assistance of counsel for initially failing to object).  Habeas relief is denied.

**VI.  Mr. Jones was Denied the Effective Assistance of Counsel at the Sentencing Phase of  his  Trial  in  Violation  of  the  Sixth, Eighth, and Fourteenth Amendments.**

Mr. Jones's sixth claim for habeas relief is that his counsel was ineffective for failing to investigate and present mitigation evidence which would have "resulted in a life recommendation from the jury."  DE 1 at 57.  He asserts three sub-claims.  The State has filed a response.[11]  Primarily, the State's argument is that "Petitioner is entitled to no relief as the claim is in part unexhausted and procedurally barred and entirely without merit."  DE 12 at 132.

**1.  <u>Failing to properly prepare experts and to present testimony of expert neuropsychologist</u>.**

Mr.  Jones's  first  sub-claim  is  that  his  counsel  was ineffective  for  failing  to  present  the  testimony  of  expert witnesses who "possessed information that was clearly mitigating, yet, without a reasonable tactical or strategic reason, was never presented to the jury."  DE 1 at 57.  Additionally, Mr. Jones argues that trial counsel was also ineffective for "failing to

---

[11] Again, the Court notes that while the State filed a ninety-two page response to this claim, it did not specifically address Mr. Jones's sub-claims in any particular order which leaves the Court to discern the State's arguments regarding these individual sub-claims.  <u>See</u> DE 12 at 132-224.

provide his expert with important background material and adequate time to conduct a full evaluation of Mr. Jones and in failing to call Dr. Einstein to testify before the jury." Id.

The State responds that when Mr. Jones's trial counsel, Art Koch, testified at an evidentiary hearing on Mr. Jones's post conviction motion, he denied or had a reasonable explanation for the actions that he took or did not take in the preparation of experts. See DE 12 at 152-54. Further, the State argues that this claim is without merit because counsel did not fail to review Mr. Jones's prior convictions, fail to seek necessary records or fail to continue an investigation when its results were showing promise. See DE 12 at 213. Finally, the State asserts that the Florida Supreme Court's rejection of this subclaim "was not an unreasonable application of Strickland." DE 12 at 213.

Mr. Jones replies that all the expert witnesses who testified at Mr. Jones's postconviction evidentiary hearing "agreed that the 1975 Jackson Memorial Hospital discharge summary which none of them were provided with at trial (because trial counsel failed to discover it) was important for a mental health expert to have access to when formulating an opinion." DE 21 at 21. Mr. Jones concludes that '[t]he manner in which Mr. Jones"s [sic] ineffective assistance of counsel claims were resolved by the Florida Supreme Court was unreasonable and contrary to the United States Supreme Court precedent." Id. at 27.

Mr. Jones first argued this claim in his Rule 3.850 postconviction motion. On appeal of its denial to the Florida Supreme Court, the court denied this claim and found as follows:

> Appellant's related contention that trial counsel failed to conduct a reasonable investigation into mental health mitigation fails as well. Appellant's trial counsel testified that he had appellant evaluated by six different experts: a neuropsychologist, a neurologist, and four psychologists. He then specifically chose to rely on Dr. Toomer and Dr. Eisenstein based on the quality and quantity of their work. Accordingly, as the trial court found, defense counsel's decisions regarding which experts should testify was both reasonable and strategic in nature, and he cannot now be deemed ineffective for failing to call additional mental health witnesses to testify. See Haliburton v. Singletary, 691 So.2d 466, 471 (Fla. 1997). Further, the evidence supports the trial court's conclusion that the testimony of appellant's experts at the evidentiary hearing conflicted with regard to diagnosis, the interpretation of the information provided them, and the applicability of mitigators, and defense counsel cannot be deemed ineffective for not presenting these conflicting opinions. See Asay v. State, 769 So.2d 974, 986 (Fla. 2000) ("[T]he trial court correctly found that trial counsel conducted a reasonable investigation into mental health mitigation evidence, which is not rendered incompetent merely because the defendant has now secured the testimony of a more favorable mental health expert.").
>
> Appellant also claimed that counsel failed to provide the experts with additional information. As the lower court found, this claim fails as well. Dr. Toomer testified that all the "new information" appellant provided him before the evidentiary hearing merely reinforced, but left unchanged, his conclusions presented at trial.

Jones, 855 So.2d at 619-20. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668

(1984).  Mr. Jones  bears the burden of establishing both deficient performance and prejudice.  See, e.g., Dill v. Allen, 488 F.3d 1344, 1354 (11th Cir. 2007).  Review of counsel's conduct is to be highly deferential, Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted.  White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992).  Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

Here, the trial court held an evidentiary hearing where Mr. Jones's attorney testified regarding his preparations and trial strategy for the penalty phase.  The trial court rejected Mr. Jones's claim of ineffective assistance of counsel.  See DE 13, App. R, Vol. 2 at 384-85.  On appeal, the Florida Supreme Court affirmed.  Under the applicable AEDPA standards, Mr. Jones is not entitled to habeas relief.  The Florida Supreme Court's ruling on Mr. Jones's ineffective assistance of counsel claim regarding his counsel's alleged failure to properly prepare experts and to present testimony of an expert neuropsychologist was not contrary

to, or an unreasonable application of, clearly established federal law. Nor was the ruling based on an unreasonable determination of the facts for the reasons outlined below.

In preparation for the penalty phase proceedings, counsel for Mr. Jones had six experts in the fields of neurology, psychology and neuropsychology interview Mr. Jones. Afterwards, Mr. Jones's counsel made a strategic decision as to which expert witnesses would best testify in mitigation. The strategy decision to call or not call witnesses is at the attorney's discretion. "A decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed." Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004), cert. denied, 544 U.S. 952 (2005). See also Dorsey v. Chapman, 262 F.3d 1181, 1186 (11th Cir. 2001) (holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy); United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980).

Accordingly, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United

50

States, 575 F.2d 515, 521 (5th Cir. 1978).  Speculation about what witnesses could have said is not enough to establish prejudice. See generally Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997); see also White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992).

A review of the record shows that even if counsel's determination not to call certain witnesses was ill-advised, Mr. Jones was not prejudiced by such an omission.  Devier, 3 F.3d at 1451.  A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied.  Strickland, 466 U.S. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995).  Here, there simply is no indication that trial counsel's decision to only call certain witnesses rendered Mr. Jones's trial "fundamentally unfair" or that "there is a reasonable probability that, but for counsel's unprofessional errors that the result of the proceeding would have been different."  Devier, 3 F.3d at 1451; Strickland, 466 U.S. at 694. Habeas relief is denied.

**2.  Failure to investigate and present evidence of Mr. Jones's horrible childhood as mitigation evidence.**

Mr. Jones's second sub-claim is that his '[t]rial counsel failed to adequately investigate Mr. Jones's childhood and present an accurate picture of Mr. Jones's life to the jury."  DE 1 at 60. Mr. Jones argues that '[n]umerous family members, including Mr. Jones's siblings, were available and willing to testify to the

51

tragic circumstances of Mr. Jones's life, but counsel, without a reasonable tactical or strategic reason, failed to present any evidence." DE 1 at 60-61.

The State responds that this is factually incorrect as Art Koch (defense counsel) testified that he interviewed multiple members of Mr. Jones's family and friends. See DE 12 at 155-56. Further, the State argues that Mr. Koch testified that he did not present certain testimony because as a strategic matter, he felt it may not be advantageous to Mr. Jones. See id. at 156. The State further argues that the state court's finding "that additional family witnesses were unavailable is also fully supported by the record." DE 12 at 217. Finally, the State argues that "[t]he record also fully supports the finding that counsel made strategic decision about what mitigation to present." DE 12 at 218.

Mr. Jones first argued this claim in his Rule 3.850 postconviction motion. On appeal of its denial to the Florida Supreme Court, the court affirmed and found as follows:

> Although it is clear that evidence of mitigation was presented at trial, appellant now contends that his counsel provided ineffective assistance by failing adequately to investigate and present mitigation during the penalty phase. In support of this claim, at the evidentiary hearing appellant presented the testimony of two of his relatives regarding his childhood and of several expert witnesses who had evaluated appellant before his trial but did not testify. The trial court concluded that counsel's investigation was reasonable and that appellant failed to establish prejudice. Competent, substantial evidence supports this determination.
>
> An attorney has a duty to conduct a reasonable

investigation for possible mitigating evidence. <u>See</u> <u>Rose</u> <u>v. State</u>, 675 So.2d 567, 571 (Fla. 1996). The evidence demonstrates that appellant's trial counsel fulfilled that duty. Appellant's trial counsel testified that appellant told him that he was frequently beaten during his childhood, and counsel interviewed several people. The aunt who raised appellant contradicted appellant's claims. She described appellant's childhood as largely "idyllic," as did another of appellant's close relatives. In addition, one of appellant's teachers described appellant as a good student, and school records obtained by counsel bore this out. She also said she never saw any evidence of abuse. At the evidentiary hearing, appellant presented the testimony of his sister and cousin to corroborate his claim. Although appellant's sister Pamela, who lived in New York, arguably corroborated appellant's claim, she testified that she did not know how to contact anyone in her family until 1997 and that no one in her family knew how to contact her during this time, either. The evidence therefore supports the court's finding that she was unavailable. In addition, the court found both her testimony and that of appellant's cousin was not credible and was contradicted by the evidence appellant's trial counsel was actually able to obtain at the time of trial. Thus, there is no credible evidence that additional investigation by appellant's trial counsel for family mitigation would have been fruitful.

<u>Jones</u>, 855 So.2d at 617-18.  As a threshold matter, the Eleventh

Circuit has held under an objective standard of reasonableness,

failing to make any preparations for the penalty phase of a capital

murder trial deprives a client of reasonably effective assistance

of counsel.  See <u>Blake v. Kemp</u>, 758 F.2d 523, 533 (11th Cir. 1985);

<u>see also</u> <u>Blanco v. Singletary</u>, 943 F.2d 1477 (11th Cir. 1991).

Having conducted a review of this record, the Court finds that the

Florida Supreme Court reasonably concluded that these allegations

are refuted by the record.  The trial court held a hearing on this

claim and found certain witnesses who testified not credible.  The

Florida Supreme Court reviewed the record and affirmed the trial court's factual finding.  "Questions whose resolution depend heavily on the trial court's appraisal of witness credibility and demeanor are deemed questions of fact." Saldo v. Crosby, 162 Fed. Appx. 915 (11th Cir. 2006) (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  "A determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e).  Under the applicable AEDPA standards, Mr. Jones is not entitled to habeas relief.  The Florida Supreme Court's ruling on Mr. Jones's ineffective assistance of claim was not contrary to, or an unreasonable application of, clearly established federal law.   Nor was the ruling based on an unreasonable determination of the facts.  The Court has reviewed the testimony presented at the evidentiary hearing before the state court, and finds that Mr. Jones has not overcome the presumption prescribed by 28 U.S.C. §2254(e).  Habeas relief is denied.

**3.   Failure to investigate organic brain damage/fetal alcohol syndrome.**

Mr. Jones's final sub-claim is that his "[t]rial counsel also unreasonably failed to investigate and pursue the issue of organic brain damage and the concomitant effects of extensive alcohol usage by Mr. Jones's mother while she was pregnant with Victor." DE 1 at 66.   Further, at sentencing Mr. Jones's trial counsel failed to

"argue and present evidence that the brain damage suffered by Mr. Jones during the offense was valid mitigation."  Id.

The State responds that this claim is unexhausted because he "raised no issue about these claims in his post conviction appeal." DE 12 at 210.  Further, the State argues that this claim is without merit because "Petitioner was provided with a number of mental health experts at the time of trial and again during the post conviction proceedings.  However, none of these experts ever diagnosed Petitioner as suffering from fetal alcohol syndrome."  DE 12 at 221.

The Court has reviewed Mr. Jones's initial brief filed with the Florida Supreme Court and has found that Mr. Jones did not argue this claim.  See DE 13, App. F., Vol. 2 at 379-96.  This claim is unexhausted and procedurally barred from further review. Castille v. Peoples, 489 U.S. 346, 351 (1989); see also supra pp. 10-12. Habeas relief is denied.

**VII. Mr. Jones's Right to Due process was Denied When He was Convicted Despite being Incompetent.**

Mr. Jones's seventh claim for habeas relief is that his counsel failed to "alert the Court to the possibility that his client was not competent to be tried" or to "request a competency evaluation and competency hearing."  DE 1 at 72.  Mr. Jones bases his claim, in large part, on the testimony of Dr. Hyman Eistenstein during a competency hearing following the guilt phase of his trial. DE 1 at 72.  Based on this testimony, Mr. Jones argues that his

counsel should have moved for a pre-trial competency evaluation. See id. Mr. Jones further argues that his counsel failed to "discover critical information which addressed Mr. Jones's psychiatric history and would have provided additional bases for concerns about Mr. Jones's competency." DE 1 at 73.

The State responds that this claim is "unexhausted, procedurally barred and without merit." DE 12 at 224. Further, the State cites to multiple experts who had interviewed and observed Mr. Jones and found him to be competent and not suffering from any mental illness or defect. See DE 12 at 225-29. The state court found Mr. Jones competent. See DE 12 at 233. In his postconviction motion, Mr. Jones argued that his trial counsel was ineffective for failing to raise competency before his trial. DE 13, Appx. R. Vol. 2. The claim was denied. See DE 12 at 233. The State argues that when he filed his appeal of the denial of his postconviction motion to the Florida Supreme Court, Mr. Jones failed to argue this claim on appeal. See DE 12 at 234. Therefore, the State argues that this claim is unexhausted. See id.

Mr. Jones replies that the Florida Supreme Court incorrectly applied the procedural bar and the Court should review this claim on the merits. See DE 21 at 34.

As the State correctly argues, Mr. Jones did not appeal this claim to the Florida Supreme Court. Accordingly, it is unexhausted

and procedurally barred from further review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>see</u> <u>also</u> <u>supra</u> pp. 10-12. "When a petitioner fails to properly raise his federal claims in state court, he deprives the State of "an opportunity to address those claims in the first instance" and frustrates the State's ability to honor his constitutional rights." <u>Cone v. Bell</u>, 129 S.Ct. 1769, 1780 (2009)(internal citations omitted). Habeas relief is denied.

**VIII.   Mr. Jones was Denied a Fair Trial and a Fair, Reliable and Individualized Capital Sentencing Determination in Violation of the Fifth, Eighth, and Fourteenth Amendments, and his Sixth Amendment Right to Counsel.**

Mr. Jones's eighth claim for habeas relief is that his constitutional rights were violated when the prosecutor "improperly referred to the defendant's failure to testify on his own behalf" and "made improper and incorrect penalty phase arguments concerning jury consideration of mitigation and concerning threat made by the defendant to a law enforcement officer involved in a prior arrest." DE 1 at 74, 76. Further, Mr. Jones argues that his counsel "unreasonably failed to have a curative instruction given to the jury by the trial court on this matter." DE 1 at 76.

The State responds that "Petitioner is entitled to no relief as the claims are unexhausted, procedurally barred and without merit." DE 12 at 240. Because his Petition is unclear as to what claim Mr Jones is asserting, the State delineates between the three "types" of claims that could have or should have been presented to

the state courts in order for Mr. Jones to properly pursue federal habeas relief.  If Mr. Jones argues that it was trial court error to have allowed certain of these prosecutorial comments to be made in front of the jury, that should have been done on direct appeal. See DE 12 at 252-54.  If Mr. Jones argues that this was ineffective assistance of counsel for his attorney to not have objected to certain comments and request a curative instruction, then that claim should have been pursued in his postconviction motion.  See DE 12 at 254.  Finally, the State argues that if his claim is that he was given ineffective assistance of appellate counsel for failing to raise an issue regarding his right to remain silent, then that should have been raised in his petition for writ of habeas corpus at the state court.  See DE 12 at 253.  Mr. Jones puts forth no additional argument in reply for this claim.  DE 21 at 35.  The Court will analyze each sub-claim in turn.

A review of the record reveals that Mr. Jones did not put forth a claim of trial error on direct appeal.  This claim is unexhausted and procedurally barred from further review.  Castille v. Peoples, 489 U.S. 346, 351 (1989); see also supra pp. 10-12.

On appeal from the denial of his Rule 3.850 postconviction motion, Mr. Jones did not raise an ineffective assistance of trial counsel claim to the Florida Supreme Court and, accordingly, this claim is also unexhausted and procedurally barred from further review.  Castille v. Peoples, 489 U.S. 346, 351 (1989); see also

supra pp. 10-12.

Mr. Jones did raise an ineffective assistance of appellate counsel claim in his petition for writ of habeas corpus filed with the Florida Supreme Court. See Jones, 855 So.2d at 619. The court denied this claim "[b]ecause these claims are either barred or lack merit, we deny the petition as to these grounds without further discussion." Id.

At trial, the prosecution made the following statement during closing argument:

> The evidence is overwhelming. It points in one direction (indicating the Defendant) and Mr. Koch tries, as he may, has to jump aside and try to blame it on somebody else. Well, as you listen to his argument, which he is going to make to you concerning the evidence in this case, ask yourself, ask him, where's the evidence to support what you are saying? Is this just like your opening statements? Are you going to tell all these things and nothing be in here to support what you say? Ask yourself that when he is talking to you?

DE 13, App. I at 30. Thereafter, defense counsel objected and moved for a mistrial. Id. at 31. The trial court denied the motion. However, the issue was preserved for appeal and Mr. Jones argued in his state petition for writ of habeas corpus that his appellate counsel was ineffective for failing to raise this claim on the direct appeal of his conviction and sentence. Id. This claim would be properly before the Court, if Mr. Jones had made this claim in his petition. However, he did not do so. See DE 12 at 258. Here, he has made no argument regarding the ineffective assistance of appellate counsel. Therefore, the Court cannot

consider it.  Habeas relief is denied.

**IX.  Mr. Jones's Sentence of Death Violates the Fifth, Sixth, Eighth, and Fourteenth Amendments because the Penalty Phase Jury Instructions were Incorrect and Shifted the Burden to Mr. Jones to Prove that Death was Inappropriate and Trial Counsel was Ineffective for not Objecting to these Errors.**

Mr. Jones's ninth claim for habeas relief consists of one sentence.  "The instructions given to Mr. Jones [sic] jury were inaccurate and dispensed misleading information regarding who bore the burden of proof as to whether a death or a life recommendation should be returned, and defense counsel unreasonably failed to object."  DE 1 at 79.  In his memorandum of law, Mr. Jones fails to make an argument as to what specific provision of the jury instructions was objectionable and violated either Florida law or Mr. Jones's rights afforded to him by the United States Constitution.  See DE 3 at 22.

The State responds that "Petitioner is entitled to no relief because the substantive claim is procedurally barred and without merit and the claim of ineffective assistance is without merit."  DE 12 at 264.  Further, the State argues that even if the Court were to find that this claim was not procedurally barred then it should find that it is without merit because the Florida Supreme Court found it to be without merit and that finding was not unreasonable.  See DE 12 at 268-69.  Mr. Jones puts forth no additional argument in reply for this claim.  DE 21 at 35.

As far as a substantive claim regarding trial court error, Mr.

Jones failed to make this claim on direct appeal of his conviction and sentence. See Jones, 652 So.2d 346 (Fla. 1995). Accordingly, it is unexhausted and procedurally barred from further review. Castille v. Peoples, 489 U.S. 346, 351 (1989); see also supra pp. 10-12. Habeas relief is denied as to this sub-claim.

Mr. Jones did properly make a claim of ineffective assistance of counsel regarding the substance of this claim in his Rule 3.850 postconviction motion. On appeal of its denial to the Florida Supreme Court, the court denied this claim finding it "unnecessary to address each claim here and affirm the lower court's denial of relief as to all of the issues raised." Jones, 855 So.2d at 615. This claim is exhausted and properly before the Court.

The Court cannot consider this claim as it is obviously insufficiently pleaded. "A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem those acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690 (emphasis added). Even if the Court were to determine that the failure to object was deemed unreasonable, Mr. Jones would have to show prejudice. Devier, 3 F.3d at 1451. In order to establish prejudice, Mr. Jones "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland,

61

466 U.S. at 694.   Mr. Jones's one sentence claim for relief not only fails to show this, it fails to even argue it.   Habeas relief is denied.

### X.   Mr. Jones's Sentence of Death is Premised Upon Fundamental Error because the Jury Received Inadequate Guidance Concerning the Aggravating Circumstances to Be Considered.

Mr. Jones's tenth claim is as vague as his ninth claim.   It consists of two sentences.   "Mr. Jones's jury was not adequately or accurately instructed.   The Jury was in fact misled by the instructions and the State Attorney's argument as to what was necessary to establish the presence of aggravating circumstances and to support death."   DE 1 at 80.   In addition to this argument, Mr. Jones also argues in his memorandum of law that "[t]rial counsel's failure to object constitutes ineffective assistance of counsel."   DE 3 at 23.

The State responds that "Petitioner is entitled to no relief, as the claims are unexhausted, procedurally barred and insufficiently plead."   DE 12 at 271.   Specifically, the State argues that Mr. Jones "did not raise an issue regarding the denial of this claim or the propriety of these instructions either in his post conviction appeal brief or his state habeas petition."   DE 12 at 272.   Mr. Jones puts forth no additional argument in reply for this claim.   DE 21 at 35.

Mr. Jones did not assert this claim at the state court level. The Court agrees with the State and finds that this claim is not

only insufficiently pleaded but, even if it were not, it is unexhausted and is procedurally barred from federal habeas review.

Mr. Jones's claim, in its entirety, quotes the trial court's instructions and then concludes that the jury was not adequately or accurately instructed.  See DE 1 at 79-80.  Mr. Jones provides no argument as to how any of these instructions were infirm. Similarly, he fails to articulate how he was prejudiced by counsel's failure to object.  Therefore, the Court denies this claim as insufficiently pleaded.  See Spillers v. Lockhart, 802 F.2d 1007 (8th Cir. 1986)(holding that it is proper to dismiss claims which do not provide "any specifics to identify precisely how his counsel failed to fulfill those obligations").

Even if this claim had been sufficiently pleaded, it is unexhausted. The Court has reviewed the record and does not find that Mr. Jones argued this claim to the Florida Supreme Court either on direct appeal, on appeal of the denial of his Rule 3.850 postconviction motion or in his petition for writ of habeas corpus. As such, this claim is unexhausted and procedurally barred from further review.  Castille v. Peoples, 489 U.S. 346, 351 (1989); see also supra pp. 10-12.   Habeas relief is denied.


**XI.  Mr. Jones's Death Sentence is Fundamentally Unfair and Unreliable, in Violation of Fifth, Sixth, Eighth, and Fourteenth Amendments Due to the State's Introduction of Non-Statutory Aggravating Factors.**

Mr. Jones's eleventh claim for habeas relief is that "there is

evidence from the record that indicates that the State deliberately inserted the non-statutory aggravator of "future dangerousness" into the trial." DE 1 at 82.  Mr. Jones also argues that "[t]o the extent that trial counsel failed to object, Mr. Jones was afforded ineffective assistance of counsel." Id. at 83.  Mr. Jones further argues that "Florida Supreme Court caselaw holding that failure to raise these claims on direct appeal results in procedural bar and that they are not cognizable in postconviction as IAC claims is a violation of Petitioner's equal protection and due process rights. Rogers v. State, 957 So.2d 547 (Fla. 2007)."  DE 3 at 24.

The State responds that 'Petitioner is entitled to no relief, as both claims are unexhausted and procedurally barred. Moreover, the substantive claim is not cognizable, and the ineffective assistance claim is insufficiently plead and without merit." DE 12 at 277.  Additionally, the State argues that "[e]ven if the claims were exhausted and not procedurally barred, Petitioner would still be entitled to no relief. The substantive claim is not even cognizable in this proceeding. Issues regarding matters of state law do not present cognizable claims in a federal habeas proceedings." DE 12 at 285.  Also, the State argues that the claim for ineffective assistance of counsel is "insufficiently plead." Id.  Mr. Jones puts forth no additional argument in reply for this claim. DE 21 at 35.

Any ineffective assistance of counsel claim based on a failure

to object is not only insufficiently pleaded but is also
unexhausted and procedurally barred from further review.  Castille
v. Peoples, 489 U.S. 346, 351 (1989); see also supra pp. 10-12.
This claim was never made to the Florida Supreme Court on appeal of
Mr. Jones's Rule 3.850 postconviction motion.  See DE 13, App. F.,
Vol. 2.  Habeas relief as to the ineffective assistance of counsel
claim is denied.

Having reviewed the record, the Court finds that Mr. Jones did
properly exhaust this claim in the state courts as to
"impermissible and inflammatory statements" made by the prosecutor
in his direct appeal.  Mr. Jones has again failed to put forth any
argument as to why the Florida Supreme Court's ruling on this claim
was an unreasonable application of clearly established federal law
or an unreasonable determination of the facts.  Mr. Jones simply
ignores the standard of review that the Court is bound to apply,
pursuant to the AEDPA.  Nonetheless, the Court has reviewed the
Florida Supreme Court's decision regarding this claim when it was
made on direct appeal of his conviction and sentence.  The decision
was as follows:

> As his final claim, Jones maintains that he is entitled
> to a new sentencing proceeding due to the individual and
> cumulative effect of several comments made by the
> prosecutor during penalty phase argument. Jones first
> argues that by describing Mrs. Nestor's murder as an
> "assassination" the State improperly instructed the jury
> on the aggravating factor of "cold, calculated and
> premeditated." Jones objected to this characterization
> and moved for a mistrial. However, the specific grounds
> raised here were not argued below and must be considered

waived. <u>Ferguson v. State</u>, 417 So.2d 639, 641 (Fla. 1982) (objection to prosecutorial comment must be made with sufficient specificity to apprise trial court of the potential error in order to preserve issue for appeal). Even if the issue had been preserved, we would find no error. The prosecutor's reference to the "assassination" of Mrs. Nestor was made in connection with a discussion of possible mitigation: "What can explain what is in mitigation of an assassination of Dollie Nestor." As noted by the trial court in overruling the objection, assassination was a reasonable characterization of the first-degree murder of Mrs. Nestor. Even if it were not, use of the term was not so prejudicial as to warrant a mistrial. <u>Cf.</u> <u>Burr v. State</u>, 466 So.2d 1051, 1054 (Fla.) (prosecutor's statements that people were afraid and that defendant "executes" people were fair comment on evidence and were not so inflammatory or prejudicial as to warrant a mistrial), <u>cert. denied</u>, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985).

Jones also maintains that a comment about former President Gerald Ford and Justice Clarence Thomas so inflamed the jury as to entitle him to a new sentencing proceeding. The State urged the jury to use its common sense to reject the defense expert's testimony that because Jones had been abandoned by his mother and raised by his aunt he suffered from extreme mental or emotional distress throughout his life. In making this argument, the prosecutor pointed out that although Clarence Thomas had been raised in a foster home and Gerald Ford had been adopted, they had been able make positive choices in their lives. Later in the argument, the prosecutor continued:

Dr. Toomer has testified that [Jones] was under extreme mental disturbance. Is everyone raised in a foster home destined to be a killer? That is ridiculous.

Use your common sense. We have talked about people, this just doesn't make any, Gerald Ford, Clarence Thomas. It is an insult to those kinds of people to-

Although Jones' objection to the "insult" comment was sustained, his motion for mistrial was denied.

It is clear from the record that the State used the Ford/Thomas comparison as part of its argument that Dr. Toomer's testimony that Jones was suffering from extreme

mental or emotional disturbance because he had been raised in a foster family was "ridiculous." Considered in context, we agree with the trial court that although the "insult" comment was "unfortunate" it was not so inflammatory or prejudicial as to warrant a mistrial.

Jones next contends that a comment concerning a threat Jones made to a security guard during a prior robbery was improper because it had "nothing to do with a statutory aggravating circumstance." During testimony concerning Jones' prior conviction of armed robbery it was revealed that Jones threatened to "get" the security guard who apprehended him after he fled from the school where the robbery was committed. In closing argument, the prosecutor referred to the fact that Jones threatened the security guard. Jones' objection to this comment was sustained but his motion for mistrial was denied.

A review of the record reveals that the reference to the threat was not urged as a nonstatutory aggravating factor. Rather, the State attempted to use the fact that Jones threatened the guard to refute Dr. Toomer's contention that Jones was under extreme mental or emotional disturbance at the time of the prior violent felony. Taken in context, this was a proper comment on the evidence and was in no way so prejudicial as to warrant a mistrial.

The remainder of the challenged comments likewise either have been mischaracterized or were proper comments on the evidence. Moreover, our review of the record reveals that even if the challenged comments could be considered improper, none of them, either individually or collectively, so undermined the jury's recommendation as to warrant a new sentencing proceeding. Davis v. State, 604 So.2d 794, 797 (Fla. 1992).

Jones v. State, 652 So.2d 346, 352-53 (Fla. 1995).

In his petition, Mr. Jones cites to "examples" of the State Attorney's inappropriate remarks which inserted the non statutory aggravator of "future dangerousness" into the trial. See DE 1 at 81. To properly analyze whether or not the state attorney made "inappropriate remarks" during Mr. Jones's trial, the Court would

need to know what remarks Mr. Jones perceived to be "inappropriate." See id. Therefore, the Court will only consider the specific concrete examples argued in the petition.

To be sure, a future dangerousness nonstatutory aggravating factor does not exist in Florida. See Kormondy v. State, 703 So.2d 454, 463 (Fla.1997) (noting that Florida's death penalty statute "does not authorize a dangerousness aggravating factor"). The Florida Supreme Court has explained that "the probability of recurring violent acts by the defendant if he is released on parole in the distant future" is not a proper aggravating circumstance in Florida. Miller v. State, 373 So.2d 882, 886 (Fla. 1979); White v. State, 403 So.2d 331, 337 (Fla. 1981)(abrogated on other grounds). Moreover, the State may not attach aggravating labels to factors that actually should militate in favor of a lesser penalty-like, as in this case, the defendant's mental impairment. See Zant v. Stephens, 462 U.S. 862, 885 (1983).

On direct appeal, the Florida Supreme Court determined that the comments challenged by Mr. Jones were either "mischaracterized or were proper comments on the evidence." Jones, 652 So.2d at 353. The Court's review of the record yields a similar conclusion. Mr. Jones cites four specific statements made by the prosecution. See DE 1 at 81-83. Mr. Jones concedes that one of these four statements was made outside the presence of the jury but argues that "the prediction by the prosecution was borne out by the

State's use of Victor Jones's symptomology as aggravation." Id. This argument is absurd and warrants no further comment by the Court.

The remaining three examples fail to set forth how the prosecution argued that Mr. Jones's future dangerousness should be considered by the jury as an impermissible non-statutory aggravating factor. Further, a review of the sentencing order shows that the trial court did not consider future dangerousness in sentencing Mr. Jones to death.  There is nothing in the record to suggest that the trial court even considered this non-statutory aggravator when adopting the jury's recommendation to impose a death sentence on Mr. Jones.  Accordingly, the decision of the Florida Supreme Court was not contrary to, or an unreasonable application of, clearly established federal law.  Habeas relief is denied.

**XII. Mr. Jones's Sentencing Jury was Misled by Comments, Questions, and Instructions that Unconstitutionally and Inaccurately Diluted the Jury's Sense of Responsibility Towards Sentencing in Violation of Eighth and Fourteenth Amendments to the United States Constitution.   Trial Counsel was Ineffective for Not Properly Objecting.**

Mr. Jones's twelfth claim for habeas relief is that because the trial judge repeatedly instructed the jury that its role was merely advisory in nature that it diminished the jury's role.  See DE 1 at 83.  Mr. Jones argues that because the trial court "failed to use the language in the Defense Proposed Penalty Phase

instruction [sic] No.#1 (Roles of Court and Jury) when the jury was re-instructed at the conclusion of the penalty phase, even though the Court granted the proposed instruction." DE 1 at 83. Mr. Jones further argues that "[t]o the extent counsel failed to object and litigate this issue, request curative instructions, and move for mistrial, counsel rendered deficient performance." DE 1 at 84.

The State responds that the "Petitioner is entitled to no relief, as the substantive claim is barred and meritless and the ineffective assistance claims are without merit. As such, the ineffective assistance claims do not serve as cause and prejudice or an independent basis for relief." DE 12 at 288. Further, the State argues that the Florida Supreme Court did review the comments regarding the jury's advisory role and determined that the judge making the final sentencing determination did not violate Caldwell.[12] See DE 12 at 295. Accordingly, a review of the Florida Supreme Court's decision will affirm that it was "not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent." Id. at 295. Mr. Jones puts forth no additional argument in reply for this claim. DE 21 at 35.

Mr. Jones first argued this claim in his Rule 3.850 postconviction motion. On appeal of its denial to the Florida Supreme Court, the court denied this claim and found as follows:

Appellant's claims regarding the trial court's giving or

---

[12] Caldwell v. Mississippi, 472 U.S. 320 (1985).

failing to give certain standard jury instructions could and should have been or were raised on direct appeal; the claims also fail because this Court has expressly upheld these instructions against identical challenges. See Asay v. State, 769 So.2d 974, 989 (Fla. 2000); San Martin v. State, 705 So.2d 1337, 1350 (Fla. 1997), cert. denied, 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998); Oats v. Dugger, 638 So.2d 20, 21 n. 1 (Fla. 1994), cert. denied, 513 U.S. 1087, 115 S.Ct. 744, 130 L.Ed.2d 645 (1995); Jackson v. State, 648 So.2d 85, 91 (Fla. 1994); Combs v. State, 525 So.2d 853, 858 (Fla. 1988) (rejecting defendant's claim that standard jury instruction is unconstitutional under Caldwell).

Jones, 855 So.2d at 616, n.4.

As an initial matter, Caldwell stated it was constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that responsibility for determining appropriateness of defendant's death rests elsewhere. The United States Supreme Court has since clarified the Caldwell decision by holding that "to establish a Caldwell violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir. 1997) (citing Romano v. Oklahoma, 512 U.S. 1 (1994) (quoting Dugger v. Adams, 489 U.S. 401 (1989)). Therefore, "references to and descriptions of the jury's sentencing verdict in this case as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority are not error under Caldwell." Davis, 119 F.3d at 1482. Mr. Jones's Caldwell claim is without merit.

Additionally, Mr. Jones had failed to establish the prejudice

required to prevail on an ineffective assistance of counsel claim. A defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." <u>Id.</u> "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693; <u>see also</u> <u>Devier v. Zant</u>, 3 F.3d 1445, 1450 (11th Cir. 1993).

In fact, Mr. Jones never argued he was prejudiced. Rather, he asserts that "[c]onfidence in the outcome is undermined." DE 1 at 84. To obtain habeas corpus relief, Mr. Jones "must do more than satisfy the <u>Strickland</u> standard. He must show that in rejecting his ineffective assistance claim, the state court 'applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.'" <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) (<u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002)). He has not done so. Therefore, habeas relief is denied.

## XIII.   Mr. Jones is Innocent of First-Degree Murder and Innocent of the Death Penalty.

The title of this claim is misleading. While it appears to assert an actual innocence claim as to the crime for which Mr. Jones was charged and sentenced to death, in truth, it does not. DE 1 at 84. Rather, Mr. Jones's thirteenth claim for relief argues that the jury's recommendation was "tainted by improper

consideration of the doubled aggravating factors" and that the aggravating circumstance of "prior conviction of a crime of violence" was invalid and "thus cannot support Mr. Jones's death sentence." DE 1 at 84-5. Therefore, Mr. Jones argues that these aggravating circumstances cannot support his death sentence and, as such, he is innocent of the death penalty. Id. at 85; see also DE 3 at 25.

The State responds "Petitioner does not proffer any facts or argument to support the assertion made in his claim heading." DE 12 at 297. As to his claim that he is innocent of the death penalty, the State argues that this claim is unexhausted because Mr. Jones "did not raise an issue regarding these claims in the appeal of the denial of his motion for post conviction relief." Id. at 301. Additionally, the State asserts this is not a cognizable claim because the United States Supreme Court has "refused to recognize a freestanding claim for federal habeas relief based on an assertion that a defendant is actually innocent of the crime." Id. at 302. The State then surmises that if the United States Supreme Court has not recognized a freestanding claim based on actual innocence of the crime then "the rationale behind the Court's refusal to recognize a freestanding claim of actual innocence regarding a conviction in Herrera would also apply to a freestanding claim of actual innocence of the death penalty." Id. at 304. Finally, the State argues that this claim is

73

insufficiently pleaded. Id. at 306.   Mr. Jones puts forth no additional argument in reply for this claim.   DE 21 at 35.

Mr. Jones's claim is that he is innocent of the death penalty.[13]   The basis for this claim is that "Mr. Jones's jury was given no limiting instruction that if they found both pecuniary gain and robbery aggravating factors to be present, that they must consider the two factors as one."   The State incorrectly argues that this claim is unexhausted.   The record shows that Mr. Jones did raise this claim on direct appeal to the Florida Supreme Court. It was denied as follows:

We find no merit to Jones' contention that the trial

---

[13]   Even if the Court were to construe this claim as one of actual innocence of the crimes for which he was convicted, it would be denied as insufficiently pleaded, unexhausted and procedurally barred. The record reflects that Mr. Jones raised this claim in his Rule 3.850 postconviction motion but did not appeal the denial of this claim to the Florida Supreme Court. See DE 13, App. R, Vol. 22 at 393; see also Jones, 855 So.2d at 615.   Therefore, it is unexhausted and is not eligible for federal habeas review. Castille v. Peoples, 489 U.S. 346, 351 (1989); see also supra pp. 10-12.   Further, it is unclear whether Mr. Jones has a right to raise a freestanding actual innocence claim at all.   Whether a federal habeas petitioner has a right to a free standing actual innocence claim remains an open question. See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne, 129 S. Ct. 2308, 2321 (2009).   "We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet. House, 547 U.S., at 554-555, 126 S.Ct. 2064; Herrera, 506 U.S., at 398-417, 113 S.Ct. 853; see also id., at 419-421, 113 S.Ct. 853 (O'Connor, J., concurring); id., at 427-428, 113 S.Ct. 853 (Scalia, J., concurring); Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142, 159, n.87 (1970)." Id. at 2322.

court erred in not instructing the jury to merge the "during the course of a robbery" and "pecuniary gain" aggravating factors. In <u>Castro v. State</u>, 597 So.2d 259, 261 (Fla. 1992), we explained that when requested the trial court should give a limiting instruction advising the jury that if it finds both of these aggravating factors present, it must consider the two factors as one. However, there was no error in this case because defense counsel never requested a limiting instruction and the trial court expressly merged the two factors in its sentencing order. <u>Derrick v. State</u>, 641 So.2d 378, 380 (Fla. 1994).

<u>Jones</u>, 652 So.2d at 350-51. In regards to his claim of innocence of the death penalty, the Court agrees with the Florida Supreme Court's analysis and finds that it is not inapposite of clearly established federal law which embraces "the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision." <u>Stewart v. Secretary</u>, 476 F.3d 1193, 1208 (11th Cir. 2007); <u>see</u> <u>also</u> <u>Johnson v. Singletary</u>, 938 F.2d 1166 (11th Cir. 1991)(en banc)("[t]hat is, but for the constitutional error, the sentencing body could not have found any aggravating factors and thus petitioner was ineligible for the death penalty"). Habeas relief is denied.

**XIV. Florida's Capital Sentencing Statute is Unconstitutional on its Face as Applied in this Case, Because it Fails to Prevent the Arbitrary and Capricious Imposition of the Death Penalty in Violation of the Eighth and Fourteenth Amendments to the United States Constitution.**

Mr. Jones's fourteenth claim for relief is based on the argument that in the State of Florida there is a presumption of death in every felony case because a defendant can be sentenced to death based on the presence of a single aggravating factor. <u>See</u> DE

1 at 85.  Mr. Jones argues that this is unconstitutional because it deprived him "of his right to due process of law and constitutes cruel and unusual punishment."  DE 1 at 85.

The State responds that "all parts of this claim but the Ring[14] claim are unexhausted, procedurally barred and meritless. Moreover, the Ring claim is barred by Teague."[15]  DE 12 at 312.  The State argues that "[t]o the extent that Petitioner is attempting to raise these claims without regard to Ring and Apprendi,[16] these claims are unexhausted."  Id. at 314.  Ultimately, the State argues that regardless of any issues of exhaustion or procedural bars, Mr. Jones cannot be granted the relief he seeks because the "United States Supreme Court has held that Florida's capital sentencing scheme is constitutional."  Id. at 317.  Finally, the State asserts that even if Mr. Jones could properly raise a Ring claim, it has been held that Ring "cannot be applied retroactively to a death sentence that was final before it was decided" and that any Apprendi claim is barred because Apprendi "directly held that it did not apply to capital cases."  Id. at 317-18.  Mr. Jones puts forth no additional argument in reply for this claim.  DE 21 at 35.

Mr. Jones first raised this claim, in part, in his petition for writ of habeas corpus filed with the Florida Supreme Court.

---

[14] Ring v. Arizona, 536 U.S. 584 (2002).

[15] Teague v. Lane, 489 U.S. 288 (1989).

[16] Apprendi v. New Jersey, 530 U.S. 466 (2000).

See Jones, 855 So.2d at 619.  The court denied this claim and found
as follows:

> Jones also contends that Florida's capital sentencing
> scheme is unconstitutional under Ring v. Arizona, 536
> U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and
> Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147
> L.Ed.2d 435 (2000). We recently rejected this claim in
> Bottoson v. Moore, 833 So.2d 693, (Fla.), cert. denied,
> 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and
> we deny Jones's claim as well. Further, we note that one
> of the aggravators found was that Jones had a prior
> violent felony conviction, a factor which under Apprendi
> and Ring need not be found by the jury. See Bottoson, 833
> So.2d at 723 (Pariente, J., concurring in result only)
> (explaining that "in extending Apprendi to capital
> sentencing, the Court in Ring did not eliminate the
> 'prior conviction' exception").

Jones, 855 So.2d at 619. The Court declines to conduct the
procedural bar analysis argued by the State because the Court finds
this claim to be without merit.  See Lambrix v. Singletary, 520
U.S. 518, 525 (1997)(citing 28 U.S.C. § 2254(b)(2)).

> A State's procedural rules are of vital importance to the
> orderly administration of its criminal courts; when a
> federal court permits them to be readily evaded, it
> undermines the criminal justice system. We do not mean to
> suggest that the procedural-bar issue must invariably be
> resolved first; only that it ordinarily should be.
> Judicial economy might counsel giving the Teague question
> priority, for example, if it were easily resolvable
> against the habeas petitioner, whereas the procedural-bar
> issue involved complicated issues of state law.

Lambrix v. Singletary, 520 U.S. 518, 525 (1997)(citing 28 U.S.C. §
2254(b)(2)).

To the extent that this claim was meant to be a Ring claim
based on arguments made by Mr. Jones in his memorandum of law, it
is denied as without merit.   Ring held that, under the Sixth

Amendment, a sentencing court cannot, over a defendant's objections, make factual findings with respect to an aggravating circumstance necessary for the imposition of the death penalty. Such findings must, as a constitutional matter, be made by a jury. See id. at 609. However, any Ring claim is foreclosed by Supreme Court precedent. In Schriro v. Summerlin, 542 U.S. 348, 355-57 (2004), the Supreme Court ruled that Ring would not be retroactively applied to cases which had become final before Ring was decided. Mr. Jones's death sentence became final in October of 1995, when the Supreme Court denied certiorari. See Jones v. Florida, 516 U.S. 875 (1995). Because Ring was not decided until 2002, Mr. Jones cannot obtain the benefit of that decision in this habeas corpus proceeding. See Sibley v. Culliver, 377 F.3d 1196, 1207-08 (11th Cir. 2004). The Ring claim is therefore denied.

Mr. Jones also claims that the Florida death penalty statute violates the Eighth Amendment to the United States Constitution because it "creates a presumption of death in every felony murder case." DE 1 at 85. This argument is duplicative of Claim XV and is addressed below.

**XV. Mr. Jones's Death Sentence is Predicated Upon an Automatic Aggravating Circumstance, Contrary to the Eighth and Fourteenth Amendments. Trial Counsel Rendered Ineffective Assistance in This Regard.**

Mr. Jones's fifteenth claim for habeas relief again challenges the sentencing statute in Florida because it "allowed the jury to

consider an aggravating circumstance which applied automatically to Mr. Jones's case once the jury had convicted Mr. Jones under the theory of felony murder during the guilt phase of the trial."  DE 1 at 86.  Mr. Jones also makes a one sentence claim for ineffective assistance of counsel:  "[t]o the extent that defense counsel failed to object, Mr. Jones received ineffective assistance of counsel, and an evidentiary hearing is warranted."  DE 3 at 27.

The State responds that "Petitioner is not entitled to any relief as the claims are unexhausted, procedurally barred and without merit."  DE 12 at 319.  The State argues that this claim is unexhausted because while Mr. Jones raised this claim in his Rule 3.850 postconviction motion, he failed to raise the claim when he appealed the denial of that motion to the Florida Supreme Court, thereby waiving this claim from federal habeas review.  See DE 12 at 320.  Further, the State argues that this claim is procedurally barred because it could have and should have been raised on direct appeal.  See DE 12 at 321.   Finally, the State asserts that even if Mr. Jones could overcome the procedural bars, this claim should still be denied because "[t]he United States Supreme Court has rejected the claim that an aggravator is unconstitutional because it duplicates an element of the offense."  Id. at 324.  Mr. Jones puts forth no additional argument in reply for this claim.  DE 21 at 35.

Even if Mr. Jones's fifteenth claim for relief is not

construed as unexhausted, procedurally barred, it is wholly without merit and habeas relief is denied.  See Proffitt v. Florida, 428 U.S. 242 (1976); Lowenfield v. Phelps, 484 U.S. 231 (1988).  In Lowenfield, the Supreme Court addressed a similar claim, in which a habeas petitioner convicted of first-degree murder and sentenced to death challenged the Louisiana death penalty statute.  There, petitioner argued that his conviction under the Louisiana death penalty statute violated the Eighth Amendment in that the only aggravating factor found by the jury duplicated one of the elements of the crime.  Id. at 246.  Thus, petitioner claimed, the aggravating factor did not genuinely narrow the class of defendants eligible for the death penalty.

The United States Supreme Court held that a capital sentencing statute's narrowing function may constitutionally be provided in either of two ways: the legislature may broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase, or the legislature may itself narrow the definition of capital offenses so that the jury finding at the guilt phase responds to this concern.  Lowenfield, 484 U.S. at 241-46.  The Supreme Court affirmed the Court of Appeals' holding denying petitioner's claim, finding that the "narrowing function" was performed by the jury at the guilt phase and that the Louisiana scheme therefore met the constitutional requirements.

The Florida legislature has defined capital offenses broadly,

authorizing the imposition of a sentence of death on those convicted of first-degree murder.  Fla. Stat. § 782.04(1).  In Florida, the narrowing function occurs at the sentencing phase, where the jury must find at least one aggravating circumstance before recommending a sentence of death.  See Proffitt v. Florida, 428 U.S. 242, 247-50 (1976) (describing Florida's sentencing procedure).

Mr. Jones's argument that the duplicative nature of the felony murder aggravator renders his sentence constitutionally infirm was rejected by the Supreme Court in Blystone v. Pennsylvania, 494 U.S. 299 (1990).  There, the petitioner was sentenced to death after the jury found a single aggravating circumstance——that the petitioner committed a killing during the perpetration of a felony——and no mitigating circumstances.  The Pennsylvania capital sentencing statute required a sentence of death under such circumstances.  Id. at 302.  The Supreme Court affirmed the constitutionality of the Pennsylvania capital sentencing statute against the petitioner's Eighth Amendment challenge.  Id. at 305.  The Court held that Pennsylvania's sentencing scheme did not amount to an automatic death sentence for one category of defendants——those convicted of felony murder——because the jury was required to weigh any mitigating circumstances against the aggravating circumstances. Had there been mitigating circumstances for the jury to consider in the petitioner's case, the jury could have voted to impose a life

sentence.  Thus, the weighing of aggravating and mitigating factors under the Pennsylvania sentencing scheme provided the requisite narrowing function and ensured that the statute did not create a category of offenders who would automatically be sentenced to death.

Moreover, the United States Supreme Court adjudged the Florida capital sentencing statute constitutional in Proffitt.  The capital sentencing statute at the time of the Supreme Court's review included the felony murder aggravator the constitutionality of which Mr. Jones now challenges.  Therefore, habeas relief is denied.

## XVI. Mr. Jones is Insane to be Executed.

Mr. Jones's sixteenth claim, in its entirety, is as follows: "Mr. Jones is insane to be executed.  Mr. Jones must raise this issue in the instant pleading as a preservation issue in consideration of the facts of his mental retardation, mental disabilities, and history of frontal lobe brain injury."  DE 1 at 86.

The State responds that while Mr. Jones acknowledges that his claim is not ripe for review, he "should be required to withdraw this claim as it is unexhausted, cannot be exhausted at this time and can be raised once the claim is exhausted and ripe."  DE 12 at 325.  The State argues that Panetti v. Quarterman, 127 S.Ct. 2842 (2007) confirmed that "sanity to be executed claims were not ripe

82

until execution was imminent and held that such claims would be properly raised for the first time in a federal habeas petition after they become ripe without being treated as successive habeas petitions under 28 U.S.C. §2244(b)." DE 12 at 327. Mr. Jones puts forth no additional argument in reply for this claim. DE 21 at 35.

Mr. Jones first argued this claim in his Rule 3.850 postconviction motion. On appeal of its denial to the Florida Supreme Court, the court denied this claim and found that "[f]inally, appellant asserts that he is 'insane to be executed' but admits that this issue is not ripe for review." Jones, 855 So.2d at 616, n.4.

The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane. Ford v. Wainwright, 477 U.S. 399, 410 (1986). While Mr. Jones has asserted a Ford claim in his petition, he correctly acknowledges that such a claim is premature as execution is not imminent and no death warrant has issued. See Panetti v. Quarterman, 127 S. Ct. 2842, 2852 (2007); ShisInday v. Quarterman, 511 F.3d 514 (5th Cir. 2007); Pierce v. Blaine, 467 F.3d 362, 367 n.2 (3d Cir. 2006). Thus, this claim will be denied without prejudice as it is premature.

**XVII.   Mr. Jones's Trial was Fraught with Procedural and Substantive Errors which Cannot be Harmless When Viewed as a Whole, Since the Combination of Errors Deprived Him of the Fundamentally Fair Trial Guaranteed Under the Sixth, Eighth, and Fourteenth Amendments.**

Mr. Jones's seventeenth claim for habeas relief is not

entirely clear.  It appears that he is making a cumulative effect of error claim.  See DE 1 at 87-88.

The State responds that "Petitioner is entitled to no relief, as the claim is unexhausted, procedurally barred and without merit."  DE 12 at 328.  The State argues that this claim is unexhausted because while Mr. Jones raised this claim in his Rule 3.850 postconviction motion when he appealed the denial of that motion to the Florida Supreme Court, he failed to raise this claim and thereby waived this claim from federal habeas review.  See DE 12 at 336.  The State concludes that even if the claim was not unexhausted and procedurally barred, the Eleventh Circuit requires that "a petitioner must show that the individual errors of a constitutional dimension had merit, that the errors were not procedurally barred and that the errors considered together deprived the petitioner of a fair trial."  DE 12 at 337.

The Court has reviewed Mr. Jones's initial brief filed with the Florida Supreme Court and has found that Mr. Jones did not argue this claim on appeal.  See DE 13, App. F., Vol. 2. Therefore, this claim is unexhausted and procedurally barred from further review.  Castille v. Peoples, 489 U.S. 346, 351 (1989); see also supra pp. 10-12.

Regardless of the exhaustion and procedural bar findings, this claim is not cognizable for federal habeas review (only in very limited circumstances not applicable here). Unless the trial was

rendered fundamentally unfair, the Eleventh Circuit Court of Appeals has declined to entertain "cumulative error" claims . See Cargill v. Turpin, 120 F.3d 1366, 1386-87 (11th Cir. 1997). Habeas relief is denied.

**XVIII.     [There is no Claim 18 in Mr. Jones's Petition].**

**XIX. The Finding of the Florida Supreme Court that the Determination of Mr. Jones's Adaptive Functioning, the Second Prong of the Definition of Mental Retardation, Requires an Assessment and Evaluation of Mr. Jones' [sic] Current Level of Functioning Rather than of His Adaptive Functioning Prior to the Age of Eighteen or Prior to the Commission of the Offense is a Violation of Mr. Jones [sic] Rights Under the Equal Protection and Due Process Clauses of the Fourteenth Amendment as Well as the Eighth Amendment's Prohibition on Cruel and Unusual Punishment. In Addition, this Finding is Directly Contrary to the Rationale of the United States Supreme Court in Atkins v. Virginia, 536 U.S. 304 (2002).**

Mr. Jones's eighteenth claim (misnumbered as his nineteenth claim) for habeas relief challenges the Florida Supreme Court's interpretation of Fla. R. Crim. P. 3.203(b) and the definition of "adaptive behavior."   DE 1 at 88.   Specifically, Mr. Jones's argument "centers around the meaning of the word 'present' in the second prong of 'concurrent deficits of impairment in present adaptive functioning.'"  DE 1 at 91.  Ultimately, Mr. Jones argues that the Florida Supreme Court's finding was "directly contrary to the rationale of Atkins v. Virginia, 536 U.S. 304 (2002)."  DE 3 at 29.

The State filed a collective response to both of Mr. Jones's

remaining claims.[17]  See DE 12 at 348-403.  The State argues that both Mr. Jones's mental retardation claims are meritless.  DE 12 at 348.  Further, the State argues that certain aspects of this claim are "procedurally barred" or "not cognizable."  See DE 12 at 394, 398.

Mr. Jones replies that the Florida Supreme Court "is wrong in its assessment that Atkins grants the task of defining mental retardation to each individual state.  On the contrary, the court [sic] in Atkins recognized that there was a national standard for the definition of mental retardation, and that the American Association of Mental Retardation (AAMR) and the American Psychiatric Association have established that clinical definition."  DE 21 at 36-7(footnote omitted).  Mr. Jones also argues that "the Florida Supreme Court's construction of Section 921.137(2) violates fundamental principles of due process restricting the permissible use of presumptions."  DE 21 at 46.  Mr. Jones concludes that "the Florida Supreme Court's requirement that a defendant prove that his IQ score meets a strict cut-off score of 70 or below (without any higher scores in his or her record) violates the clear dictates of Atkins and is unconstitutional under the Eighth Amendment and its Florida constitutional analogue."  Id. at 51.

---

[17] Mr. Jones asserts two claims for relief regarding mental retardation. The first challenges the Florida Supreme Court's interpretation of Fla. R. Crim. P. 3.203(b) as it applies to the definition of adaptive functioning while the second challenges the finding that Mr. Jones is not mentally retarded.

Mr. Jones first raised this claim in a successive postconviction motion alleging that he is mentally retarded. See Jones v. State, 966 So.2d 319, 322 (Fla. 2007). "At the time, Florida Rule of Criminal Procedure 3.203, which governs this issue, was not final, and the circuit court summarily denied Jones's motion. Jones appealed the order, arguing that he was entitled to a hearing under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and rule 3.203. We relinquished jurisdiction for the court to hold an evidentiary hearing." Jones, 966 So.2d at 322.

At the hearing held in circuit court, three expert witnesses testified. See id. After the hearing, the circuit court found "no credible evidence" to support Jones's claim and "held Jones did not meet even one of the three statutory requirements for mental retardation." Id. at 325. The Florida Supreme Court affirmed. See Jones v. State, 966 So.2d 319 (Fla. 2007).

Although Mr. Jones argues that the Florida Supreme Court wrongly interpreted Fla. R. Crim. P. 3.203(b) and Fla Stat. §921.137, section 921.137 "applies only to persons sentenced to death after the effective date of the statute in 2001. Fla. Stat. 921.137(8)." Carroll v. Secy. Dept. of Corr., 574 F.3d 1354, 1367 (11th Cir. 2009). Mr. Jones was sentenced to death in 1993. Therefore, §921.137 is inapplicable to Mr. Jones and "it is only within the context of Atkins' mental retardation definition that

this Court evaluates Petitioner's claim." Id. at 1367. Accordingly, the portion of this claim in which Mr. Jones argues that the Florida Supreme Court erred in interpreting its statute and rule on the execution of mentally retarded persons is denied.

However, Mr. Jones also makes the argument in this claim that the Florida Supreme Court's findings are "directly contrary to the rationale of the United States Supreme Court in Atkins v. Virginia, 536 U.S. 304 (2002)." DE 3 at 29. This is the appropriate argument for the Court to evaluate. As the basis for this claim and the basis for his final claim overlap, the analysis for both claims is below.

**XIX. The Florida Supreme Court's Finding Affirming the Lower Court's Finding That Mr. Jones is Not Mentally Retarded because the Three Prongs of the Mental Retardation Definition were not Supported by Clear and Convincing Evidence is in Error. This Resulted in a Violation of Mr. Jones [sic] Rights Under the Equal Protection and Due Process Clauses of the Fourteenth Amendment as well as the Eighth Amendment's Prohibition on Cruel and Unusual Punishment.**

Mr. Jones's final claim for habeas relief is that the Florida Supreme Court "seems to have created an irrebuttable presumption that a defendant is not mentally retarded, and thus subject to infliction of the death penalty, on the basis of a fact that has no rational relationship to the presumed fact." DE 3 at 44.

**A.    Testimony by the Experts and Findings Below.**

Mr. Jones's first sub-claim is that certain expert witnesses found his IQ score to be below 70, which would place him in a

88

category of persons which the United States Supreme Court, in Atkins, has identified as having the cut-off IQ score for the intellectual function prong of the mental retardation definition. DE 1 at 103. The record contradicts this assertion. The record shows that while Mr. Jones may have scored below 70 on one IQ test, Mr. Jones also scored above 70 on multiple IQ tests. Jones, 966 So.2d 319, 323 (Fla. 2007). Further, this alone is not determinative of a finding of mental retardation. A person must also "demonstrate 'significantly subaverage general intellectual functioning' along with deficits in adaptive behavior and an onset before age 18." Carroll, 574 F.3d at 1369 (emphasis in original).

**B. The Lower Court's Findings Ignored the Facts and the Evidence Presented Below.**

Mr. Jones's second sub-claim is that the state court appointed two experts to evaluate Mr. Jones for mental retardation. See DE 1 at 105. It is argued that these experts reached vastly different opinions regarding Mr. Jones's classification of mental retardation. Id. Mr. Jones's claim seems to primarily center around the argument that Dr. Suarez's (expert on behalf of the State of Florida) methodology and results were flawed in many respects. DE 1 at 105-110. Although Mr. Jones doesn't actually put forth argument, it appears implied in the heading of this claim that if Dr. Suarez's expert opinion was flawed, then the state

court decision on this claim was also flawed.[18]  DE 1 at 105.  After
an evidentiary hearing, the court made a factual determination that
"there is no credible evidence to suggest" that Mr. Jones is
mentally retarded.  The Florida Supreme Court affirmed.

> Jones first argues that the trial court erred in
> concluding that because his IQ was consistently above 70,
> he did not meet the first prong of the mental retardation
> definition. Jones claims that mental retardation may be
> diagnosed in individuals with IQs between 70 and 75 when
> they exhibit significant deficits in adaptive behavior.
> First, we already have found the trial court's
> determination that Jones is not deficient in adaptive
> functioning to be supported by competent, substantial
> evidence. Insofar as this involves the application of
> Florida's statute, we find this claim also fails under
> the plain language of the statute.
>
> Under Florida law, the first prong of a mental
> retardation determination requires that the person
> exhibit "significantly subaverage general intellectual
> functioning," and further defines that term as
> "performance that is two or more standard deviations from
> the mean score on a standardized intelligence test"
> specified by the Department of Children and Family
> Services. § 921.137(1), Fla. Stat. (2005). The Department
> in turn has designated the WAIS, the test administered to
> Jones, as an approved test. Fla. Admin. Code R.
> 65B-4.032. On the WAIS, a score of 70 is two standard
> deviations from the mean. Accordingly, under the plain
> language of the statute, "significantly subaverage
> general intellectual functioning" correlates with an IQ
> of 70 or below. See Zack v. State, 911 So.2d 1190, 1201
> (Fla. 2005) ("Under Florida law, one of the criteria to

_____

[18] Of course, as with so many of Mr. Jones's claims, the
petition fails to state with any specificity what the state
court's determination was and why it "resulted in a decision that
was contrary to, or involved an unreasonable application of,
clearly established federal law, as determined by the Supreme
Court of the United States," or "resulted in a decision that was
based on an unreasonable determination of the facts in light of
the evidence presented in the state court proceeding."  28 U.S.C.
§ 2254(d)(1)-(2).

determine if a person is mentally retarded is that he or she has an IQ of 70 or below."). Jones's scores on the WAIS were as follows: 72 (1991), 70 (1993), 67 (1999), 72 (2003), and 75 (2005). In other words, the scores did not indicate "significantly subaverage general intellectual functioning." Further, each of these tests was administered after Jones was shot in the head when he murdered the Nestors. Dr. Suarez testified that his examination of the records and his testing of Jones indicated Jones's intelligence was probably higher before the head injury. Dr. Eisenstein, Jones's expert, testified that the head injury was a "major trauma" resulting in impairment of Jones's ability to concentrate and remain focused, and negatively affecting his perceptual processes. Further, none of the many doctors who examined Jones at trial and during prior postconviction proceedings, including Dr. Eisenstein, considered Jones to be mentally retarded. Thus, competent, substantial evidence supports the circuit court's finding that Jones did not meet the first prong of the mental retardation definition.

Next, Jones contends that the trial court erred in determining that he failed to meet the remaining prong of the mental retardation definition: manifestation or onset before age 18. Much of Dr. Eisenstein's "retrospective" diagnosis was focused on this prong. The expert's findings on this prong were based on statements from Jones's Aunt Laura that contradicted her trial testimony, information garnered from Jones's cousin and sister-witnesses whom the circuit court previously found not credible-and information selectively drawn from Jones's records. As explained in our discussion of the previous issue, valid record evidence refuted claims that Jones was a slow learner in special classes who was unable to take care of himself.

Finally, Jones appears to claim that the circuit court should not have applied the clear and convincing evidentiary standard. We need not address this claim. In this case, the circuit court found that "[t]here is no credible evidence to suggest that Jones is mentally retarded." (Emphasis added.) Thus, Jones did not present evidence sufficient to meet even the lesser standard of preponderance of the evidence. See Trotter, 932 So.2d at 1049 n.5 (finding it unnecessary to address claim that clear and convincing standard was unconstitutional "because the trial court concluded that Trotter was not

mentally retarded [under] <u>either</u>" standard).

In his reply brief, Jones raises for the first time a claim that the trial court abused its discretion by appointing Dr. Eisenstein as an expert at defendant's request because the court was not "open to hearing and considering his testimony." First, this claim was not preserved for review. Further, because it was first raised in the reply brief, we need not address it. <u>See</u> <u>Hall v. State</u>, 823 So.2d 757, 763 (Fla.2002) ("Hall made no argument regarding equal protection in his initial brief; thus, he is procedurally barred from making this argument in his reply brief."); Fla. R. App. P. 9.210(d) ("The reply brief shall contain argument in response and rebuttal to argument presented in the answer brief."). In any event, the claim is meritless. Judgments of credibility are within the trial court's purview. The record indicates that the circuit court considered all the testimony, and its determination that Jones is not mentally retarded is not an indication otherwise. Accordingly, the court did not abuse its discretion by appointing Eisenstein. <u>See</u> <u>Porter v. State</u>, 788 So.2d 917, 923 (Fla.2001) (stating that regarding a trial court's decisions on questions of fact, credibility of witnesses, and evidentiary weight, "this Court will not substitute its judgment for that of the trial court").

<u>Jones</u>, 966 So.2d at 329-30.

While the Florida Supreme Court analyzed the trial court's determinations under the microscope of Fla. Stat. §921.137, the Court will consider the factual determinations in the context of <u>Atkins</u> and under the AEDPA standard of review.  <u>See</u> <u>Carroll</u>, 574 F.3d at 1367.

As the Supreme Court explained, mental retardation is generally defined as having an IQ below 70, <u>see</u> <u>id.</u> at ---- n. 5, 122 S.Ct. at 2245 n. 5, accompanied by "significant limitations in adaptive skills such as communication, self-care, and self-direction that become manifest before age 18," <u>id.</u> at ----, 122 S.Ct. at 2250. An individual who is mentally retarded has a "diminished capacit[y] to understand and process information, to

92

communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." Id. (footnote omitted). In Atkins, the Supreme Court said that even though the deficiencies faced by mentally retarded individuals "do not warrant an exemption from criminal sanctions, ... they do diminish their personal culpability." Id. at ---- - ----, 122 S.Ct. at 2250-51. As a result, the Court held that "the mentally retarded should be categorically excluded from execution" because they are less deserving of society's ultimate retribution and less susceptible to the deterrent effects of the death penalty. Id. at ----, 122 S.Ct. at 2251. The Court also noted that, for a variety of reasons, "[m]entally retarded defendants in the aggregate face a special risk of wrongful execution." Id. at ----, 122 S.Ct. at 2252. Thus, under Atkins, a mentally retarded individual cannot be executed even if a jury has found multiple aggravating circumstances to exist.

Brownlee v. Haley, 306 F.3d 1043, 1073 (11th Cir. 2002).

Here, the state circuit court and the Florida Supreme Court found that the evidence established that Mr. Jones was administered "either the WAIS-R (Wechsler Adult Intelligence Scales) or WAIS-III intelligence test between 1991 and 2005." Jones, 966 So.2d 319, 323 (Fla. 2007). Mr. Jones's IQ scores were "72, 70, 67, 72 and 75." Id. Mr. Jones's expert witness, Dr. Eisenstein acknowledged that Mr. Jones's IQ scores were higher than 70 but testified that the "applicable diagnostic manual allowed for a mental retardation diagnosis when the IQ fell in the 70 to 75 range if the other two criteria were met." Jones, 966 So.2d at 323. The other two criteria being that there was a deficiency in adaptive skills and onset before the age of 18. See id. Dr. Eisenstein opined that he viewed the third prong to be determinative of the time period for

which the second prong should be analyzed.  This resulted in Dr. Eisenstein only considering Mr. Jones's childhood behavior when determining if Mr. Jones experienced any deficits in adaptive functioning.  See id.  For this reason (and others), the state circuit court rejected Dr. Eisenstein's testimony and accepted that of Dr. Suarez.  See id. at 327.  Dr. Suarez ultimately found that "Jones's demonstrated abilities, communication skills, and evident high degree of thought and daily functioning did not support a diagnosis of mental retardation."[19]  Id. at 325.

Dr. Suarez relied on his interview and testing with Mr. Jones,

---

[19]

Suarez found Jones to be articulate and noted Jones's vocabulary, internally consistent sentences, detailed and insightful narration, and his understanding of concepts. For example, as Jones recounted abuse he suffered as a child, Dr. Suarez asked him if the abuse was ever reported to the authorities. Jones responded, "They had a family code thing. They kept it secret like my cousin making my sister pregnant." In prison, Jones understood his own medical conditions, e.g., diabetes, high blood pressure, and high cholesterol, knew his medications, and was allowed to keep the medications in his cell and self-administer them on schedule. Jones recognized when he had medical problems, and requested help. FN2. As to the onset before age 18 prong, Dr. Suarez testified that Jones's grades were good in school until junior high when his failing grades matched his poor conduct and effort. He also noted that for an eleven-year-old to stowaway on an airline "takes a tremendous amount of sophistication." In short, Jones's demonstrated abilities, communication skills, and evident high degree of thought and daily functioning did not support a diagnosis of mental retardation.

Jones, 966 So.2d at 324-25 (footnote omitted).

"his examination of records regarding Jones's life from his childhood to the time of the Rule 3.203 hearing and interviews and testing of DOC staffers who observed Smith [sic] on a regular basis" in reaching his conclusion. Id. Similarly, the court heard the testimony of Lisa Wiley, a psychological specialist from the Department of Corrections. She testified:

> She testified that Jones always kept a neat cell and demonstrated polite and appropriate behavior. He spoke rationally, coherently, and logically, and she never thought he was mentally retarded. She regularly met with inmates such as Jones who were on psychotropic medications, and she helped process death row inmates' requests for assistance. Jones filed written requests for assistance, such as a request to have his television repaired, and filed written grievances. In 2004, Jones wrote the following grievance complaining that money sent from someone in Europe had not been credited to his inmate account:
>
> *Dear Sir, This is regarding I've had money transferred through a bank in Belgium and back on the Fri th13-04 [sic] I received a bank receipt from them-where as I have never had my money put in my account or received a deposit receipt from Tallahassee and I've tried to get a copy of the receipt made, but could not, so I'm sending you my receipt. So if you could please help me maybe after you see it you could make a copy and fax it to the bank, But according to the date, there is no reason why my money shouldn't be in my account, would appreciate your help.*

Id. at 324 (emphasis added).

It was this testimony and that of Dr. Suarez that the Florida Supreme Court used to analyze whether or not Mr. Jones met the definition of mentally retarded. Determining that Mr. Jones did not meet the definition of mental retarded is certainly not an unreasonable determination of the facts in light of the evidence

presented.

Obviously, the state court heard the testimony of the three experts and found the experts on behalf of the state more credible. The credibility of a witness is a determination for the trial court not a federal habeas court. See Freund v. Butterworth, 165 F.3d 839 (11th Cir. 1999) (citing Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) ("Title 28 USC § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The state courts have determined this issue and the record here does not reveal that the Court's deference to the state court's determination would be in anyway misplaced. Credibility is a factual issue. "A determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e).

Further, having conducted a review of the entire record, the Court determines, under the governing AEDPA standard of review, that the Florida Supreme Court reasonably concluded that Mr. Jones is not mentally retarded. Mr. Jones presented the same arguments to the Florida Supreme Court as those set forth here and those claims were squarely rejected. Mr. Jones has failed to put forth any additional or compelling evidence that this determination was

flawed.  The Florida Supreme Court's ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Nor was it based on an unreasonable determination of the facts in light of the evidence presented.  Habeas relief is denied.

**VI.** **CONCLUSION**

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Petitioner Victor Tony Jones's Petition For Writ Of Habeas Corpus (DE 1) be and the same is hereby **DENIED**; and

2. Final Judgment shall be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this ___7th___ day of March, 2011.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record